Bertha M. MADDEN et al.,
Plaintiffs-Appellees,

v.

The STATE OF OKLAHOMA et al.,
Defendants-Appellees and
Third-Party Plaintiffs,

v.

BOARD OF COUNTY COMMISSION-
ERS OF the COUNTY OF BEAVER,
BEAVER, OKLAHOMA, Third-Party
Defendant-Appellant.

No. 74–1639.

United States Court of Appeals,
Tenth Circuit.

Argued May 20, 1975.

Decided Oct. 2, 1975.

Robert Goetzinger, Asst. Dist. Atty., Beaver, Okl., for third-party defendant-appellant.

Raymond J. Totoro, Oklahoma City, Okl. (Nita Giles, Oklahoma City, Okl., on the brief), for defendants-appellees and third-party plaintiffs.

Stephen G. Brooks, New York City (Ronald F. Pollack, New York City, on the brief, with Richard Vallejo, of Shadid, Black & Albert, Oklahoma City, Okl., also on the brief), for plaintiffs-appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

Beaver County, Oklahoma, appeals a federal district court order requiring the State of Oklahoma to implement the federal food stamp program in Beaver County. Beaver County also appeals the trial court's determination that under state law Beaver County must pay the state administrative cost of distributing the food stamps.

Plaintiffs, representing Beaver County residents eligible for food stamps, originally brought suit against the State of Oklahoma and its officials to require their implementation of the food stamp program in Beaver County. Defendants then entered a complaint praying that should judgment be entered for the plaintiffs such judgment should be against the Board of County Commissioners of the County of Beaver as third-party defendants.

Prior to 1974 each participating state could choose within which political subdivisions to conduct the federal food stamp program. However, in 1973 Congress

enacted an amendment to the program which stated:

> The State agency is required to submit, prior to January 1, 1974, for approval, a plan of operation specifying the manner in which such State agency *intends to conduct the program in every political subdivision in the State,* unless such State agency can demonstrate that for any political subdivision it is impossible or impracticable to *extend the program* to such subdivision. The Secretary shall make a determination of approval or disapproval of a plan of operation submitted by a State agency in sufficient time to permit institution of such plan by no later than June 30, 1974.

7 U.S.C. § 2019(e) (emphasis added).

 The first issue in this appeal is whether the amendment requires participating states to conduct the program in all their political subdivisions absent approval to the contrary by the Secretary of Agriculture. We affirm the ruling of the trial court that participating states are so required.

The only statutory authority[1] relied upon by the appellants in contending the Act permits optional conduct of the program by a participating state is the first sentence of 7 U.S.C. § 2019(e):

> The State agency of each State desiring to participate in the food stamp program shall submit for approval a plan of operation specifying the manner in which such program will be conducted within the State, the political subdivisions within the State in which the State desires to conduct the program, and the effective dates of participation by each such political subdivision.

The plain import of the amendment of 1973 is to alter the heretofore optional participation within political subdivisions. The new language clearly commands the "State agency" of a participating state to submit a plan of operation indicating the manner in which it "intends to conduct the program in *every* political subdivision [of] the State". Any possibility that a state agency could submit a plan of operation for all subdivisions under which the state did not conduct the program in certain subdivisions is specifically negated by language providing that program non-participation is only permitted where the state agency can demonstrate to the Secretary that it is "impossible or impracticable to extend the program."[2]

The correctness of this construction of the statute is buttressed by statements interpreting the statute. In President Nixon's submission of the 1975 fiscal year budget to the Congress, he stated:

> The changes in the food stamp programs required by the farm bill (Public Law 93–86) amendments[3] will have a profound effect on participation levels . . . . The mandatory nationwide expansion[4] of the program will reach an additional 789 areas . . .

Appendix to the Budget for Fiscal Year 1975, at 204. Statements of members of Congress in discussing Puerto Rico's failure to comply with the implementation deadlines furnish further evidence. Senator Phillip A. Hart, a member of the Senate Select Committee on Nutrition and Human Needs stated:

> This past summer . . . *Congress made the food stamp program mandatory for every political subdivision in the United States, Puerto Rico*

---

1. Appellant's reliance upon language of the Food Stamp Act indicating that states may choose whether or not to participate, 7 U.S.C. § 2013(a) is irrelevant.

2. The fact that there may still be certain subdivisions not participating under this language justifies the retention of 7 U.S.C. § 2019(c), (d). Appellants' reliance on these provisions to show the optional nature of subdivision participation is, therefore, misplaced.

3. Public Law 93–86 added the 1973 amendment to 7 U.S.C. § 2019(e), quoted *supra.*

4. Because state participation remains optional and all states were then participating in the food stamp program, the mandatory nationwide expansion, to which President Nixon refers, can only mean the mandatory expansion into all political subdivisions of each participating state.

*and the territories. Under that legislation, the food stamp program must be implemented in every area of every State, territory and the Commonwealth by June 30, 1974,* unless it is clearly demonstrated by each State, territory or Commonwealth that it is administratively impossible or impracticable to implement the program by that time.

120 Cong.Rec. 2789 (daily ed. Mar. 5, 1974) (emphasis added). Senator Edward Brooke also stated:

In 1973, the Congress added an amendment to the Food Stamp Act *which made the program mandatory for every political subdivision of the United States,* Puerto Rico and the U.S. territories. *Except in the most extraordinary circumstances where it might be administratively impossible, the program was to be implemented in every jurisdiction by June 30, 1974.*

120 Cong.Rec. 3583 (daily ed. Mar. 13, 1974 (emphasis added). The appellants in this case have furnished no legislative history or congressional statements which support their position. Thus, we affirm the trial court's ruling that participating states must conduct the food stamp program in all of their political subdivisions.

■ The second issue raised by appellants concerns Oklahoma law under which the trial court required Beaver County to pay the administrative costs of the food stamp program. Oklahoma law clearly requires the county to pay the state administrative costs,[5] 56 Okl. Stat. § 241:

(c) The cost of distributing the food stamps shall be paid by the county.

Except as provided in subsection (d) of this section, the board of county commissioners shall be required to pay the estimated cost in advance . . . . .

(d) The board of county commissioners may at its option operate the program of distributing food stamps to families, certified as eligible by the Oklahoma Public Welfare Commission, within the county and the agreement with the Commission will provide for such operation with the provision that the county furnish adequate qualified personnel, suitable facilities for storing and issuing stamps and such bonding of personnel and insurance that may be required by the Oklahoma Public Welfare Commission; that such sale, distribution and accounting of food stamps shall be in compliance with all federal and state regulations applicable thereto.

(e) If the sale and distribution of food stamps within the county is to be handled by the Oklahoma Public Welfare Commission, at its election, the food stamps may be distributed through one or more issuing offices, or through local banks, or through other means. The board of county commissioners may be required to reimburse the Commission for a prorated share of the total cost of such distribution, based upon the number of persons participating in the county.

The distribution program in Beaver County occurs under subsection (e), *supra,* thus Beaver County is required to reimburse the Oklahoma Public Welfare Commission for the County's prorated share of the total cost of distribution.

Affirmed.

---

**5.** The federal government pays 50 percent of the administrative costs. 7 U.S.C. § 2024(b).