Commonwealth of Pennsylvania, Department of
Public Welfare, Plaintiff *v.* Adams County,
Harry F. Biesecker, Ward D. Taylor, Kenneth
E. Guise, Commissioners, Defendants.

Argued March 8, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Joseph M. Farrell,* Assistant Attorney General, with him *M. David Smeltz,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for plaintiff.

*John R. White,* with him *H. Thomas Pyle,* and *Pyle and Phillips,* for defendant.

Opinion by President Judge Bowman, May 13, 1977:

To a complaint in assumpsit by the Department of Public Welfare (Department) against defendants Adams County and three named commissioners (County), the defendants have filed preliminary objections in the nature of a demurrer and a motion to strike.[1] In disposing of the preliminary objections we accept as true all properly pleaded allegations of material fact contained in the pleading to which the preliminary objections are addressed, as well as every inference

---

[1] The Department has invoked this Court's original jurisdiction under Section 401 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.401.

fairly deducible therefrom and facts of which the court can take judicial notice. *Township of Springdale v. Kane,* 11 Pa. Commonwealth Ct. 254, 312 A.2d 611 (1973); *Commonwealth v. Toro Development Co.,* 2 Pa. Commonwealth Ct. 429 (1971).

The material facts are as follows. In November, 1967, the outgoing Board of Commissioners of Adams County voted to participate in the Federal Food Stamp Program.[2] Three months later the vote was rescinded by the new Board of Commissioners.

On March 2, 1972, the Adams County Council of Community Services, a private organization acting without the consent or approval of the County, voluntarily assumed responsibility for fifty per cent of the administrative costs of the program as it would be operated in Adams County. Food stamp distribution was then started. On July 1, 1974, this source of funding dried up. The Department, nevertheless, continued distribution and began to send invoices to the County for fifty per cent of the administrative expenses. The Department continued sending invoices through the quarter ending March 31, 1976, when such liability for participating counties was terminated.[3] The amount in question, including interest exceeds $13,300. The County has refused to pay.

By these proceedings the Department seeks to recover that amount. Count one of its complaint is framed in terms of a statutory duty in the County to assume the liability in question. Count two is framed in quasi-contract. As we sustain the demurrer to both counts, we need not rule upon the motion to strike.

To dispose of the issues raised it is necessary to turn first to Section 1991 of The County Code, Act of

---

[2] *See* The Food Stamp Act of 1964, 7 U.S.C. §2011 et seq.

[3] Act of June 23, 1976, P.L. ——, Act No. 93, *amending* Section 471 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §471.

August 9, 1955, P.L. 323, *as amended*, 16 P.S. §1991, which makes County participation in the food stamp program optional. Upon adoption of such a program participating counties are responsible for one half of the administrative expenses for the fiscal year 1967-1968 and thereafter.

The Department takes the position that at least to the extent that Section 1991 provides for optional county participation, it was impliedly repealed by Section 471 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §471, as it existed prior to the amending Act of June 23, 1976, P.L.   , Act No. 93. This contention is without merit, as the presumption against the implied repeal of a statute has not been overcome. *Lehigh Valley Cooperative Farmers v. Commonwealth,* 8 Pa. Commonwealth Ct. 18, 305 A.2d 908 (1972).

Before the 1976 Amendment, Section 471 provided:

> To compute for each quarter the amount of Commonwealth funds expended by the department for the administration of the food stamp program *for each county or city of the first class*. For the fiscal year 1965-1966, thirty per cent; for the fiscal year 1966-1967, forty per cent; and, for the fiscal year 1967-1968, and thereafter, fifty per cent of the amount so expended for each county or city of the first class shall be certified to it, and shall become its obligation to be paid to the department. (Emphasis added.)

On its face, Section 471, as originally enacted, was limited to counties and cities of the first class; a local government classification to which Adams County does not belong. The Department would apparently have us construe this to read "every county, and for each city of the first class" and, in quoting the statute in its brief, has employed ellipses to create such

an illusion. However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa. C.S. §1921(b).

The language, "every county, and for each city of the first class" is, in fact, employed in the 1976 amending Act of Section 471 of the Code but reliance upon such language as indicating a past liability would ignore the rule of statutory construction that "new provisions [of an amended statute] shall be construed as effective only from the date when the amendment became effective," in this case April 1, 1976. Statutory Construction Act of 1972, 1 Pa. C.S. §1953. The amended Section 471 purports only to terminate liability for those counties and those cities of the first class which had been participating in the program and thereby incurred liability. It can be construed as doing no more.

The Department also errs in relying upon 1973 amendments to Federal legislation requiring states to submit plans involving participation in the program of every political subdivision with exceptions not here applicable. 7 U.S.C. §2019(e). We need only note that the Federal legislation does not address itself to State-County relationships and that any attempt to do so on the part of Congress would be of dubious constitutionality. *See Shapp v. Sloan,* 26 Pa. Commonwealth Ct. 599, 367 A.2d 791, 799, n.4 (1976); *see also Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 45, *rehearing denied,* 384 U.S. 967 (1966); *Parker v. Brown,* 317 U.S. 341, 351, 359-60 (1943).

Therefore, we must conclude that the relationship between the Commonwealth and Adams County during the period in question and concerning the administrative expenses of the food stamp program was governed by Section 1991 of The County Code. The Common-

wealth, by appropriate legislation, could have imposed liability upon Adams County but did not so exercise its powers.[4] *See Chester County v. Philadelphia Electric Co.*, 420 Pa. 422, 218 A.2d 331 (1966); *Pennsylvania Turnpike Commission Land Condemnation Case*, 347 Pa. 643, 32 A.2d 910 (1943); *Commonwealth v. Walker*, 305 Pa. 31, 156 A. 340 (1931). We shall not do so by judicial fiat.

The Department's claim in quasi-contract must also fail. An essential element to a cause of action in quasi-contract is that the so-called enrichment be unjust. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Durham Terrace, Inc. v. Hellertown Borough Authority*, 394 Pa. 623, 148 A.2d 899 (1959), *aff'g per cur.*, 16 Pa. D. & C. 2d 231 (C.P. Northampton, 1957). As the relationship between the parties was governed by statute, and as pursuant to that statute the County was under no obligation to participate in the program or to assume a share of administrative costs absent voluntary participation, the benefits conferred upon the County can not be said to have been unjustly acquired or retained.

## Order

Now, May 13, 1977, the defendants' preliminary objection in the nature of a demurrer is sustained and the complaint of the Department of Public Welfare is dismissed.

---

[4] A county is merely a subdivision of the State Government. It is neither a sovereign nor an independent entity within the State and can not question the State's power over it unless the Constitution is impugned. *Commonwealth v. Walker*, 305 Pa. 31, 156 A. 340 (1931). Subject only to unspecified constitutional limitations, the Commonwealth may exercise absolute control over counties and has the power, unless surrendered, to add or subtract duties, to abolish a county and to take property used by a county for public purposes without compensation therefor. *Pennsylvania Turnpike Commission Land Condemnation Case*, 347 Pa. 643, 32 A.2d 910 (1943).

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. The majority says that the phrase, "for each county or city of the first class," appearing in Section 471 of the Public Welfare Code, 62 P.S. §471, enacted in 1967, clearly and unambiguously means, "each county of the first class or each city of the first class." I believe that the phrase, "for each county or city of the first class," can as readily be read as meaning, "each county regardless of its class or each city of the first class." The phrase is not clear and unambiguous to me and I would seek to ascertain the intention of the General Assembly by considering, among other matters, the circumstances under which the statute was enacted. 1 Pa. C.S. §1921 (c).

Important circumstances here are (1) that the City of Philadelphia and the County of Philadelphia are coterminous; (2) that the municipal affairs of Philadelphia, including welfare, are conducted by city government; (3) that only vestiges of the former Philadelphia county government have existed for many years; and (4) that Philadelphia is the only county of the first class as well as the only city of the first class in all of Pennsylvania. I do not think that the General Assembly meant to name Philadelphia twice in the same phrase; first, as each county of the first class and second, as each city of the first class. I believe that the General Assembly intended by Section 471, both before and after the 1976 amendment, to require that every county in which the food stamp program was administered and, as well, the City of Philadelphia should reimburse the Commonwealth for a part of the costs of that administration. I believe that the General Assembly promptly realized that Section 1991 of the County Code, 16 P.S. §1991 enacted in 1965, was simply an invitation to counties to share in the cost of the administration of the food stamp program

and that it compelled sharing by all counties as well as Philadelphia by the enactment of Section 471 of the Public Welfare Code in 1967.