392 A.2d 692

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant,

v.

ADAMS COUNTY, Harry F. Biesecker, Robert W. Klunk and Kenneth E. Guise, Commissioners, Appellees.

Supreme Court of Pennsylvania.

Argued May 23, 1978.

Decided Oct. 27, 1978.

Melvin H. Evans, Jr., J. Justin Blewitt, Jr., Deputy Attys. Gen., for appellant.

John R. White, Carlisle, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

In this action in assumpsit filed in the Commonwealth Court by the Commonwealth of Pennsylvania, Department of Public Welfare, the Commonwealth sought recovery from Adams County and its Commissioners for fifty per cent of the costs of administering the Federal Food Stamp Program in that county during the period July 1, 1974, to March 31, 1976. The court below sustained defendants' preliminary objection in the nature of a demurrer and dismissed the plaintiff's complaint. This appeal followed.

The background of the case is as follows: In August, 1964, Congress enacted the Food Stamp Program which provided for optional participation by states and their political subdivisions.[1] In December, 1965, the Pennsylvania General Assembly responded by enacting three statutes which, taken together, provided for statewide implementation of the program on a voluntary basis.[2] Each of these laws permitted

1. See The Food Stamp Act of 1964, Act of August 31, 1964, P.L. 88–525, § 2, 78 Stat. 703, 7 U.S.C.A. § 2011, *et seq.*

2. Act of December 1, 1965, P.L. 977, § 1, 62 P.S. § 2544 (applicable to any county of the first class and any city of the first class); Act of

adoption of the Food Stamp Program by resolution, and established the percentage of administrative costs to be assumed by participating counties and paid to the administering state agency, the Commonwealth's Department of Public Welfare (Department). In November, 1967, acting pursuant to Section 1991 of the Pennsylvania County Code [3] permitting participation by third through eighth class counties,[4] the Commissioners of Adams County, a county of the sixth class,[5] adopted the program by resolution. By subsequent resolution in February, 1968, Adams County withdrew its participation in the program before implementation was begun.

In June, 1967, the General Assembly enacted Section 471 of the Pennsylvania Public Welfare Code.[6] Section 471 re-enacted Section 1991's method of computing the share of administrative costs owed to the Department by *"each county or city of the first class."* [Emphasis added.] Although Section 471 made no reference to voluntary adoption of the program by political subdivisions, as was provided by Section 1991, neither did it explicitly repeal Section 1991.[7]

Implementation of the Food Stamp Program in Adams County began on March 1, 1972. At that time responsibility for the county's share of administrative costs was voluntarily assumed by the Adams County Council of Community Affairs. On August 10, 1973, the Federal Food Stamp Act was amended, effective June 30, 1974, to require each "State

December 1, 1965, P.L. 978, No. 359, § 2, 16 P.S. § 5198.1 (applicable to counties of the second class); Act of December 1, 1965, P.L. 978, No. 358, § 2, 16 P.S. § 1991 (applicable to third through eighth class counties).

3. See n. 2, supra.

4. See Act of August 9, 1955, P.L. 323, § 102, 16 P.S. § 102.

5. See Act of August 9, 1955, P.L. 323, § 210, *as amended*, September 9, 1971, P.L. 458, No. 107, § 1, 16 P.S. § 210.

6. Act of June 13, 1967, P.L. 31, No. 21, art. 4, § 471, 62 P.S. § 471.

7. But see Act of June 13, 1967, P.L. 31, No. 21, art. 15, § 1502, 62 P.S. § 1502, which provides for general repeal of all acts insofar as they are inconsistent with Act No. 21.

agency"[8] to submit "a plan of operation specifying the manner in which such State agency intends to conduct the program in every political subdivision in the State . . ."[9] On July 1, 1974, the Adams County Council of Community Affairs terminated its funding of the county's share of administrative costs. Nevertheless, the Department continued distributing food stamps in Adams County and billed the county for fifty per cent of the administrative expenses for each quarter in the period from July 1, 1974, to March 31, 1976, when the liability for participating counties was terminated.[10] By this action, the Department seeks to recover half of the costs of administering the Food Stamp Program during that period, or approximately $13,300.

The Department claims recovery on two bases: (1) Adams County's statutory liability under 62 P.S. § 471, and (2) its liability in quasi-contract on a theory of unjust enrichment. Commonwealth Court sustained a preliminary objection to the plaintiff's complaint on both grounds. We have concluded that a cause of action was stated under 62 P.S. § 471, and the Commonwealth Court erred in dismissing the Department's complaint.

The Federal Food Stamp Act of 1964 provided for optional participation by States and their political subdivisions in the Federal Food Stamp Program. The 1964 Act contained the following language:

"(e) The State agency of each State *desiring to participate* in the food stamp program shall submit for approval a plan of operation specifying the manner in which such program will be conducted within the State, the political subdivisions within the State in which the State desires to conduct the program, and the effective dates of participa-

8. The applicable "State agency" in Pennsylvania is the Department of Public Welfare, appellant herein. See generally, 71 P.S. § 591, *et seq.* and 62 P.S. § 401, *et seq.*

9. Act of August 10, 1973, Public Law 93–86, § 3, 87 Stat. 247, 7 U.S.C.A. 2019(e).

10. See Act of June 23, 1976, P.L. 412, No. 93, § 1, amending Act of June 13, 1967, P.L. 31, No. 21, art. 4, 62 P.S. § 471.

tion by each such political subdivision." [Emphasis added.] 7 U.S.C.A. § 2019(e)

In 1965, the Pennsylvania General Assembly enacted three separate statutes which permitted counties of the first through eighth classes to adopt the Food Stamp Program by resolution. The statute applicable to Adams County as a county of the sixth class was Section 1991 of the Pennsylvania County Code which states as follows:

"The board of commissioners of any county to which this act applies *may by resolution* adopt the food stamp program. *Upon adoption of the program* the county shall appropriate money and shall pay, quarterly from county funds, the amounts certified to the county as being the obligations to the Department of Public Welfare for thirty per cent of the amount expended by the department for administration of the food stamp program for the county during the fiscal year 1965–66, for forty per cent of the amount expended during the fiscal year 1966–67 and for fifty per cent of the amount expended during the fiscal year 1967–68 and thereafter." [Emphasis added.] 16 P.S. § 1991

In 1967, the General Assembly enacted a comprehensive statutory scheme of public assistance known as the Public Welfare Code and entitled "An Act to consolidate, editorially revise, and codify the public welfare laws of the Commonwealth." [11] Section 471 of the Act provides:

"To compute for each quarter the amount of Commonwealth funds expended by the department for the administration of the food stamp program for *each county or city of the first class.* For the fiscal year 1965–66, thirty per cent; for the fiscal year 1966–67, forty per cent; and, for the fiscal year 1967–68, and thereafter, fifty per cent of the amount so expended for *each county or city of the first class* shall be certified to it, and shall become its obligation to be paid to the department." [Emphasis added.] 62 P.S. § 471

11. Act of June 13, 1967, P.L. 31, No. 21, art. 1, § 101, 62 P.S. § 101. The title of a statute may be considered in the construction thereof. See 1 Pa.C.S.A. § 1924.

The Commonwealth asserts that Section 471 superseded Section 1991, and that Section 471 provides the basis for Adams County's statutory liability. It argues, while Section 1991 requires payment of a share of administrative costs by counties which have voluntarily adopted the program, Section 471 contains no language indicating that county participation is optional and, on its face, requires participation and reimbursement of administrative costs by every county in the Commonwealth. In sustaining the preliminary objection in the nature of a demurrer, the Commonwealth Court held that Section 471 did not impliedly repeal Section 1991 and that, "on its face, *Section 471,* as originally enacted, *was limited to counties and cities of the first class;* a local government classification to which Adams County does not belong." [Emphasis added.] Thus, the court concluded, the county's obligation for administrative expenses of the Food Stamp Program during the period July 1, 1974, to March 31, 1976, was still governed by Section 1991 of the County Code, and, since Adams County had withdrawn from the program by resolution, it was not obligated under Section 1991 to reimburse the Department. We are compelled to disagree with Commonwealth Court's interpretation of Section 1991 and Section 471.

The Commonwealth Court determined the phrase contained in Section 471—viz., "each county or city of the first class" is "clear and free from all ambiguity" and, thus, the words of the statute are not to be disregarded in ascertaining legislative intent.[12] We cannot agree that the phrase "each county or city of the first class" unambiguously refers only to counties and cities of the first class. The phrase can also be read to mean "each county regardless of its class and each city of the first class." Since the words of the statute are not "clear and free from all ambiguity," the intention of the General Assembly [13] must be ascertained by

12. See the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(b).

13. See 1 Pa.C.S.A. § 1921(a) which states that ascertainment of the intention of the General Assembly is the object of all statutory construction.

considering other factors, including the consequences of a particular interpretation.[14]

If the troublesome phrase "each county or city of the first class" is construed, as it was by the Commonwealth Court, to mean only counties of the first class and cities of the first class, then Section 471 refers exclusively to Philadelphia, which is the only county of the first class as well as the only city of the first class in the Commonwealth of Pennsylvania.[15] Furthermore, it is unlikely that the General Assembly intended Section 471 to replace only 62 P.S. § 2544, and not 16 P.S. § 1991 and 16 P.S. § 5198.1.

Finally, in determining whether the General Assembly intended Section 471 to be applicable to every county in the Commonwealth or only to counties of the first class, we note that Section 471 was amended in 1976 to terminate the liability of "every county, and . . . each city of the first class" for their statutory share of the administrative costs of the Food Stamp Program.[16] It is clear that the 1976 law applies to every county regardless of class and sought to clarify the prior ambiguous language of Section 471. The General Assembly, in terminating the liability of every county by amending Section 471, must have considered that every county was liable under Section 471 prior to the 1976 amendment. Furthermore, the new language in Section 471 clearly reiterates the intent of the prior Section 471 to impose liability for the period in question on every county. Thus, we conclude that Section 471 was applicable to every county which participated in the Food Stamp Program.

We conclude further that Section 471, as originally enacted, mandated participation in the Food Stamp Program

14. See 1 Pa.C.S.A. § 1921(c).

15. See Act of August 9, 1955, P.L. 323, § 210, 16 P.S. § 210, *as amended,* October 20, 1967, P.L. 470, No. 223, § 1 and September 9, 1971, P.L. 458, No. 107, § 1, 62 P.S. § 210 (Supp.1978–79); Act of August 31, 1971, No. 98, § 1, 53 P.S. § 101; Pa. Manual, Section 6, Local Government.

16. Act of June 13, 1967, P.L. 31, No. 21, art. 4, § 471, *as amended,* June 23, 1976, P.L. 412, No. 93, § 1, 62 P.S. § 471 (Supp.1978–79).

by every county and thus superseded Section 1991 to the extent that Section 1991 provided for voluntary participation by counties.

■ Section 1991 and Section 471 may be considered *in pari materia* inasmuch as they relate to the same subject matter—viz., the obligation of certain counties receiving federal food stamps for a share of administrative costs. As such, they should be construed together, if possible, as one statute. See 1 Pa.C.S.A. § 1932(a) and (b). However, where, as in this case, provisions of statutes enacted by different General Assemblies are irreconcilable, the statute latest in date shall prevail. See 1 Pa.C.S.A. § 1936. Furthermore, where a general provision of a statute is in conflict with a special provision of another statute and the two provisions are irreconcilable, the general provision shall prevail if it was enacted later and the General Assembly intended that such general provision shall prevail. See 1 Pa.C.S.A. § 1933. Here, Section 471, enacted two years after Section 1991, is essentially a re-enactment of Section 1991 except that Section 1991 pertains only to counties of the third through eighth classes and is contingent upon voluntary adoption by those counties. The more general provisions of Section 471 contain no contingencies and are applicable to "each county."

Finally, we are guided by the following rule of statutory construction:

"§ 1971. Implied repeal by later statute

(a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject." 1 Pa.C.S.A. § 1971(a).

■ The Pennsylvania Welfare Code, of which Section 471 is a part, was enacted for the purpose of consolidating

the Commonwealth's public welfare laws.[17]  Prior to its passage, three separate laws provided for the optional participation of political subdivisions in the Food Stamp Program.[18]  Section 471, as part of the codification of the public welfare laws, replaces the three separate laws with one section that covers the entire subject matter of participation by political subdivisions in the Food Stamp Program.  Thus, under 1 Pa.C.S.A. § 1971, Section 471 has impliedly repealed Section 1991, and participation in the Federal Food Stamp Program and a concomitant obligation for a share of administrative costs are mandated by state law for each county, as well as each city of the first class, since the obligation which Section 471 imposes is not contingent upon voluntary adoption of the program.

In fact, a program of food stamp distribution was not begun in Adams County until March 1, 1972, and between that date and July 1, 1974, the county's share of administrative costs was assumed by a private agency.  Whatever doubts existed during that period regarding Adams County's legal obligation under Section 471 to participate in the program and share in its costs should have been dispelled when Congress enacted the 1973 amendments to the Food Stamp Act mandating operation of the program in every political subdivision of each state after June 30, 1974.

As originally enacted Section 2019(e) of the Food Stamp Act provided for optional participation by States and their political subdivisions.  In 1973 that section was amended to read in pertinent part as follows:

"The State agency is required to submit, prior to January 1, 1974, for approval, a plan of operation specifying the manner in which such State agency intends to conduct the program in *every political subdivision in the State,* unless such State agency can demonstrate that for any political subdivision it is impossible or impracticable to extend the program to such subdivision.  The Secretary shall make a

17.  See n. 11, supra at 695.

18.  See n. 2, supra at 694.

determination of approval or disapproval of a plan of operation submitted by a State agency in sufficient time to permit institution of such plan by no later than June 30, 1974." [Emphasis added.] Act of August 10, 1973, Public Law 93–86, § 3, 87 Stat. 247, 7 U.S.C.A. 2019(e).

■ As a result of the 1973 amendments, after June 30, 1974, participation in the Food Stamp Program by every political subdivision of each State was mandated, thus rendering meaningless the voluntary adoption provision of Section 1991.[19] In light of the federal mandate and Section 471's requirement that participating counties share in the program's costs, we conclude that the Department has stated a cause of action against Adams County on the basis of its statutory liability.

Commonwealth Court also dismissed the complaint as not stating a cause of action in quasi-contract on the basis that " . . . the County was under no obligation to participate in the program or to assume a share of administrative costs absent voluntary participation." Since our interpretation of Section 471 shows the county indeed had an obligation to participate and to assume a share of the costs, that basis for dismissing the complaint was without foundation.

Order of Commonwealth Court granting Adams County's preliminary objection in the nature of a demurrer is reversed, and the case is remanded for further proceedings.

MANDERINO, J., filed a dissenting opinion in which POMEROY, J., joined.

MANDERINO, Justice, dissenting.

The majority concludes that Section 471 of the Pennsylvania Public Welfare Code, as originally enacted, required each county to participate in the Federal Food Stamps Program and thus impliedly repealed Section 1991 of the Pennsylvania County Code providing for voluntary adoption. In order

19. See Senate-House Conference Committee Report to Public Law 93–86, 119 Congressional Record 26897 (daily edition July 31, 1973). See also *Madden v. State of Oklahoma,* 523 F.2d 1047, 1048 (10th Cir. 1975).

to arrive at this conclusion the majority interprets the phrase "for each county or city of the first class" as ambiguous and therefore looks to legislative intent and finds the legislature *must* have intended to mean every county regardless of its class and cities of the first class. I must dissent.

The majority is attempting to reach a desired result when it finds the phrase ambiguous. In fact, it is a strained interpretation which reads the phrase "of the first class" as modifying only "city" and not "county."

The Commonwealth Court was correct when it stated: "On its face, Section 471, as originally enacted, was limited to counties and cities of the first class; a local government classification to which Adams County does not belong. The Department would apparently have us construe this to read 'every county, and for each city of the first class' and, in quoting the statute in its brief, has employed ellipses to create such an illusion. However, '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

The language, 'every county, and for each city of the first class' is, in fact, employed in the 1976 amending Act of Section 471 of the Code but reliance upon such language as indicating a past liability would ignore the rule of statutory construction that 'new provisions [of an amended statute] shall be construed as effective only from the date when the amendment became effective,' in this case April 1, 1976. Statutory Construction Act of 1972, 1 Pa.C.S. § 1953. The amended Section 471 purports only to terminate liability for those counties and those cities of the first class which had been participating in the program and thereby incurred liability. It can be construed as doing no more."

30 Pa.Cmwlth. 164, 167–68, 373 A.2d 143, 145 (1977). I therefore dissent.

POMEROY, J., joins in this dissenting opinion.