Richard E. Law, Plaintiff *v*. Gery J. Fisher and James B. Wilson, Secretary of the Pennsylvania Department of Transportation, Defendants.

Argued September 26, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt, DiSalle and MacPhail. Judges Mencer and Craig did not participate.

*John E. Domalakes*, with him *Rubright, Domalakes, Troy & Miller*, for plaintiff.

*Clifford B. LePage, Jr.*, and *Frank A. Fisher, Jr.*, Assistant Attorney General, with them *Robert W. Cunliffe*, Deputy Attorney General, and *Gerald Gornish*, Acting Attorney General, for defendants.

OPINION BY JUDGE CRUMLISH, JR., March 27, 1979:

Defendants Gery J. Fisher and James B. Wilson, the former Secretary of the Pennsylvania Department of Transportation (PennDOT), have filed preliminary objections in the nature of a demurrer, *inter alia*, to a complaint in equity filed by Richard E. Law (Plaintiff), a former PennDOT employee.[1]

The complaint, which invokes our original jurisdiction, alleges that Plaintiff's removal from his appointed position as a Highway Maintenance Superintendent V was the result of a practice of patronage that runs afoul of the Civil Rights Act of 1871, 42 U.S.C. §§1983 and 1985(3), and resulted in a deprivation of his right of freedom of association, due process and equal protection. He seeks reinstatement to his former position, backpay dating from his unlawful dismissal, and an injunction against defendants' firing him in the future for any reason other than substandard work performance.

---

[1] The complaint was originally filed in the Court of Common Pleas of Berks County and was transferred to the Commonwealth Court on May 3, 1978.

The factual averments of Plaintiff's complaint indicate that he was a PennDOT employee who performed his duties in an exemplary manner and was dismissed from his position as a result of "pressure" exerted by Gery J. Fisher, the Chairman of the Democratic Committee of Berks County, because of Plaintiff's association with a "rival faction" of the Democratic Party in Berks County. Plaintiff further alleges that he was informed of his dismissal via a letter from John Harhigh, Director of PennDOT's Bureau of Personnel, which dismissed him ostensibly for substandard work performance.

Although the complaint does not specify whether this action is being brought against Defendant Wilson in his official or individual capacity, our original jurisdiction is limited to civil actions or proceedings brought against a state officer acting in his *official* capacity, 42 Pa.C.S. §761(a)(1), and we will so limit our consideration of the sufficiency of this complaint.[2]

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[2] In ruling upon preliminary objections raised by demurrer, we accept as true all well and clearly pleaded averments of material fact and inferences fairly deducible therefrom and disregard all of pleader's conclusions of law. *Department of Public Welfare v. Adams County*, 30 Pa. Commonwealth Ct. 164, 373 A.2d 143 (1977); *Commonwealth ex rel. Saunders v. Creamer*, 11 Pa. Commonwealth Ct. 160, 312 A.2d 454 (1973).

In support of his action, Plaintiff cites *Elrod v. Burns,* 427 U.S. 347 (1976), wherein certain public employees, Republicans who alleged they were fired from their positions in the Cook County Sheriff's Office because of their partisan political affiliation, were permitted to maintain a §1983 action against Elrod, the newly elected Sheriff who actually ordered the dismissals, as well as Richard J. Daley as the de facto head of the County's Democratic Party and two Cook County Democratic organizations who directed Elrod to fire the employees who refused to support the Democratic Party or obtain the sponsorship of one of its members.

While *Elrod v. Burns, supra,* is authority for the proposition that non-policymaking public employees whose political beliefs and association are inhibited by patronage practices present a cognizable claim under Section 1983,[3] it is not authority for the proposition that affirmative participation in the deprivation need not be alleged against the named defendants. Therefore, accepting Plaintiff's allegations of constitutional injury as true for purposes of our consideration of the preliminary objections, we must determine whether the complaint alleges the requisite "affirmative link" between Defendants' conduct and Plaintiff's constitutional injury. *See Rizzo v. Goode,* 423 U.S. 362, 371 (1976).

An action against Defendant Wilson in his official capacity as Secretary of PennDOT is the equivalent of

---

[3] The absence of an allegation that Plaintiff's former position was a non-policymaking position is not fatal to his complaint. The characterization of his job as policymaking is the assertion of an overriding governmental interest that would justify the encroachment of Plaintiff's protected interest in political association that is more properly raised as an affirmative defense. *See Elrod v. Burns, supra. See also Illinois State Employees Union, Council 34 v. Lewis,* 473 F.2d 561 (7th Cir. 1972).

an action against PennDOT, a state instrumentality. *Downs v. Department of Public Welfare,* 368 F. Supp. 454 (E.D. Pa. 1973); *Bichrest v. School District of Philadelphia,* 346 F. Supp. 249 (E.D. Pa. 1972); *Bennett v. Gavelle,* 323 F. Supp. 203 (D.Md. 1971). Even assuming, *arguendo,* that PennDOT is a "person" under Section 1983 amenable to suit in a state forum,[4] Plaintiff's complaint is nonetheless deficient.

A recent U.S. Supreme Court opinion, *Monnell v. New York City Department of Social Services,* 436 U.S. 658 (1978), considered the issue of a governmental body's liability under Section 1983 in a suit brought by several female employees challenging formal, written policies of the Department of Social Services and Board of Education of New York City which, they alleged, denied them equal protection of the laws by compelling pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons. The suit was brought against several defendants in their official capacities, the Department of Social Services and the Board of Education, and sought injunctive relief and backpay for the periods of unlawful forced leave. The Court held that "the touchstone of a §1983 action against a government body is an allegation that official policy . . . [or] governmental 'custom,' even though such custom has not received formal approval through the body's official decisionmaking channels" is responsible for the alleged constitutional deprivation. *Monnell, supra,* 436 U.S. at 690.

---

[4] We need not address ourselves to what Judge KRAMER termed "the entangling web formed by the conjunction of sovereign immunity, Article III of the United States Constitution, the Eleventh Amendment, and the so-called '11½ Amendment'" in the context of an action brought in a state court. *Sharp v. Commonwealth,* 29 Pa. Commonwealth Ct. 607, 609-10, 372 A.2d 59, 61 (1977).

Thus, the pertinent inquiry is whether the complaint alleges a constitutional injury visited by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monnell, supra,* 436 U.S. at 694.

There is no allegation in the instant complaint that Plaintiff's firing and denial of a hearing was effected pursuant to a well-settled or pervasive pattern of patronage dismissals that would be properly categorized as "custom"[5] or official policy.

Nor has Plaintiff alleged any actions undertaken by Defendant Wilson, as PennDOT's Secretary, which can be fairly said to represent an official policy of prohibited patronage. The only portions of the complaint that pertain to Defendant Wilson's alleged complicity are:

> 10. On October 12, 1976, the plaintiff sent a letter to the said John Harhigh requesting a departmental hearing relative to his firing. A copy of said letter is attached hereto and made a part of this Complaint and is marked Exhibit 'B'.

---

[5] "Custom or usage" within the intendment of Section 1983 encompasses practices of state officials so well-settled and persistent us to have the force of law. "This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 168 (1970).

A well-settled practice of wholesale patronage dismissals existed in the Cook County Sheriff's Office whereby it had been "the practice of the Sheriff . . . when he assumes office from a Sheriff of a different political party, to replace non-civil service employees of the Sheriff's Office with members of his own party. . . ." *Elrod v. Burns, supra,* at 351. Such a practice would be properly termed "custom" for purposes of Section 1983.

11. The defendant, JAMES B. WILSON, through his agents and/or employees has failed to provide the plaintiff with a departmental hearing relative to the firing of plaintiff. This refusal has continued from October 12, 1976 up to the present time.

Plaintiff has not alleged that Defendant Wilson was Secretary of PennDOT either at the time of his firing or at the time his request for a hearing was directed to and denied by John Harhigh. There are no allegations that Plaintiff has ever renewed his request for a hearing addressing it to Wilson or that Wilson is even *aware* of Plaintiff's firing and request for a hearing.

As alleged in Paragraph 11 of the complaint, a hearing has been denied through Wilson's "agents or employees." Reading the complaint as a whole, it is clear that this refers to PennDOT's agents or employees. Similarly, Plaintiff's allusions to Defendant Fisher's pressuring PennDOT to fire Plaintiff can only be read as an allegation that Fisher exerted pressure on PennDOT's agents or employees to fire Plaintiff. Plaintiff thus attempts to impose liability on PennDOT for the constitutional torts of its employees under a theory of respondeat superior.

The U.S. Supreme Court in *Monnell, supra,* at 691, expressly rejected the use of respondeat superior as a basis of liability against a municipal employer:

> [T]he language of §1983, read against the background of . . . legislative history, compels the conclusion that Congress did not intend municipalities to be held liable *unless action pursuant to official municipal policy caused a constitutional tort.* (Emphasis added.)

This reasoning is no less compelling in the instant case. In the absence of an allegation that PennDOT's

official policy caused Plaintiff to suffer constitutional injury at the hands of one of PennDOT's employees, Plaintiff has failed to allege a cause of action that can withstand Defendant Wilson's demurrer. Therefore, we dismiss Plaintiff's §1983 action as against Defendant Wilson in his official capacity.

Similarly, PennDOT cannot be liable under a theory of respondeat superior as a co-conspirator under Section 1985(3) for the actions of one of its employees. Plaintiff has failed to aver any facts that would indicate participation of PennDOT's officers in a conspiracy to deny Plaintiff equal protection of the laws sufficient to render PennDOT liable. We, therefore, sustain Defendant Wilson's demurrer to Plaintiff's §1985(3) claim against Wilson in his official capacity.

The remaining defendant, Gery J. Fisher, is a private party and clearly not within our exclusive original jurisdiction. Thus, we are without jurisdiction to consider Defendant Fisher's preliminary objections and must retransfer this case to the Court of Common Pleas for disposition of same. *McDevitt v. Golin,* 35 Pa. Commonwealth Ct. 409, 386 A.2d 627 (1978); *Schroeck v. Pennsylvania State Police,* 26 Pa. Commonwealth Ct. 41, 362 A.2d 486 (1976).

Accordingly, we

## ORDER

AND Now, this 27th day of March, 1979, the preliminary objections in the nature of a demurrer raised by Defendant Wilson are hereby sustained and Plaintiff Richard E. Law's complaint is hereby dismissed as to Defendant Wilson in his official capacity. As to the remaining defendant, this matter is transferred to the Court of Common Pleas of Berks County, pursuant to 42 Pa.C.S. §5103(c), for disposition of preliminary objections heretofore filed and undisposed of and further proceedings thereafter, if necessary.

The Chief Clerk of this Court is hereby directed to certify to the Prothonotary of said court photocopies of the docket entries of the proceedings in this Court and transfer to him the record thereof.