**Walter S. SACHS**

v.

**CONTINENTAL OIL COMPANY.**

**Civ. A. No. 76–441.**

United States District Court,
E. D. Pennsylvania.

June 15, 1978.

Carl T. Bogus, Steinberg, Greenstein, Gorelick & Price, Philadelphia, Pa., for plaintiff.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

[1] The plaintiff, Walter S. Sachs, a consultant in oil and gas investments, claims in

a three-count complaint that he is entitled to recover from defendant, Continental Oil Company, $11,150 plus punitive damages in connection with defendant's sale in April 1975 of certain oil and gas interests owned by defendant in Texas. Jurisdiction is found on diversity of citizenship, 28 U.S.C. § 1332, inasmuch as plaintiff is a resident and citizen of Pennsylvania and the defendant is a Delaware corporation with its principal place of business in Connecticut. Count one of the complaint claims a contractual right to a commission or finder's fee; count two claims unjust enrichment; and count three alleges a tort claim, malicious interference with plaintiff's right to a commission or finder's fee. Defendant has filed a motion to dismiss for failure to state a cause of action or for summary judgment. Both parties have filed affidavits.[1] After a careful review of the record, the Court finds that there is no genuine issue as to any material fact and for the reasons hereinafter discussed, the Court will grant the defendant's motion for summary judgment.

Fed.R.Civ.P. 56(c) provides in pertinent part:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, in examining the propriety of a motion for summary judgment, the court must first determine whether there is a genuine issue as to any material fact.[2] Summary judgment may not be used to deprive a litigant of a full trial of genuine fact issues but may be granted where there are no disputed issues of material fact. *Collins v. Pennsylvania Tel. Union, Local No. 1944,* 431 F.Supp. 842, 846 (W.D.Pa.1977); *West Virginia Housing Development Fund v. Sroka,* 415 F.Supp. 1107, 1115 (W.D.Pa. 1976); *Jackson v. Werner,* 394 F.Supp. 805, 806 (W.D.Pa.1975). If there is a genuine issue as to any material fact, the motion for summary judgment will not be granted. *Ettinger v. Johnson,* 556 F.2d 692, 696 (3d Cir. 1977); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir. 1951); *Toebelman v. Missouri-Kansas Pipe Line Co.,* 130 F.2d 1016, 1018 (3d Cir. 1942).

In all summary judgment motions, all doubts as to the existence of material facts should be resolved against the movant. *Hicks v. ABT Associates, Inc.,* 572 F.2d 960 at 967 (3d Cir., filed January 19, 1978); *Abdallah v. Caribbean Sec. Agency,* 557 F.2d 61, 63 (3d Cir. 1977); *Scott v. Plante,* 532 F.2d 939, 945 (3d Cir. 1976). In addition, Fed.R.Civ.P. 56(e) provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*General Elec. Co. v. Hol-Gar Mfg. Corp.,* 431 F.Supp. 881, 884 (E.D.Pa.1977). If the opposing party does not so respond, summary judgment may appropriately be granted. *First National Bank v. Cities Service,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Proctor v. State Farm Mutual Automobile Insurance Co.,* 182 U.S.App.D.C. 264, 277, 561 F.2d 262, 275 (1977).

---

1. Matters outside the pleadings having been presented by both parties in affidavits and having been considered by the Court, the defendant's motion has been treated as one for summary judgment. Fed.R.Civ.P. 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Moreland v. Western Pennsylvania Interscholastic Athletic League,* 572 F.2d 121 at 126 (3d Cir., filed Feb. 27, 1978); *Mazaleski v. Treusdell,* 183 U.S.App. D.C. 182, 189, 562 F.2d 701, 708 (1977).

2. The concern of Rule 56 is whether issues of material fact, as distinguished from issues of fact, are in dispute, *Tarasi v. Pittsburgh National Bank,* 555 F.2d 1152, 1156 (3d Cir. 1977); *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 100 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

The following facts are uncontested: Plaintiff is an independent investment consultant in oil and gas interests. Defendant is engaged in the sale and purchase of oil and gas interests. On or about March 1, 1973, defendant purchased from Girard Bank interests in the Jo-Mill Unit, Borden and Dawson Counties, Texas ("Jo-Mill"), held by Girard as custodian for Charles B. Grace, Jr. et al., for eighty-five thousand dollars. This sale was for one-half of the holdings by Girard in Jo-Mill. Subsequently, a question was raised as to whether all of Girard's interest had been conveyed, and to resolve the matter an agreement was proposed by defendant in a letter dated November 11, 1974 and accepted by Girard on December 26, 1974. Under this agreement, Girard agreed to solicit bids for its remaining one-half interest in Jo-Mill, and further agreed to give defendant the right to purchase the remaining one-half interest for the amount of the highest bid received prior to December 31, 1974 or eighty-five thousand dollars, whichever was higher. Girard also agreed to send to the defendant "in confidence" a copy of the highest bid, and defendant had thirty-one days to exercise its right to purchase. The agreement further provided that Girard's written solicitation for bids would advise bidders of defendant's right to purchase the remaining one-half interest in Jo-Mill and that the name of the highest bidder would be disclosed "in confidence" to the defendant.

At all times during the above transactions, the plaintiff was acting as a consultant to Girard. It was understood between Girard and the plaintiff that if the plaintiff effected a sale of any oil or gas interests plaintiff would be entitled to the customary five percent finder's fee. Plaintiff solicited offers to purchase the remaining one-half interest in Jo-Mill and in January 1975, plaintiff received a bid from Austral Oil Company through its agent, Chandler and Savage, Midland, Texas to purchase Girard's remaining one-half interest for two hundred twenty-three thousand dollars. The plaintiff discussed Austral's bid with Girard and consented to permit Girard to send the bid to the defendant pursuant to Girard's December 26, 1974 agreement with the defendant.

The defendant was notified in a letter from Girard, dated January 27, 1975, of Austral's bid.[3] On February 11, 1975, in a telephone conversation with Austral, the defendant confirmed the authority of Chandler and Savage to make the two hundred twenty-three thousand dollar offer on behalf of Austral, and in that conversation Austral advised defendant that it would be interested in buying defendant's one-half interest in Jo-Mill. Subsequently, defendant, in a letter dated March 3, 1975, declined to exercise its preferential right to purchase Girard's remaining one-half interest in Jo-Mill and instead, on April 14, 1975, conveyed its own interest in Jo-Mill to Austral for two hundred twenty-three thousand dollars.[4] The defendant did not know of any interest or activity of the plaintiff in connection with Girard's sale of the one-half interest to defendant in 1973 nor did it know of any interest or activity of the plaintiff in connection with the sale of the remaining one-half interest by Girard to Austral in 1975. Further, Girard's correspondence with Chandler and Savage does not contain any information concerning the interest or activity of the plaintiff in the transactions.

---

**3.** Under the terms of the December 26, 1974 agreement between defendant and Girard, defendant had a right to purchase the remaining one-half interest of Girard in Jo-Mill for the amount of the highest bid received prior to December 31, 1974 or eighty-five thousand dollars, whichever was higher, and Girard agreed to send to defendant "in confidence", before January 10, 1975, a copy of the letter setting forth the highest bid. In fact, plaintiff did not receive Austral's bid until January 22, 1975, and defendant was not notified of the bid until January 27, 1975. Inasmuch as neither party has raised this matter of untimely submission, the Court will not discuss it further.

**4.** Girard sold its remaining interest in Jo-Mill to Austral for two hundred twenty-three thousand dollars. In connection therewith, plaintiff received five thousand dollars from brokers in Midland, Texas as well as an additional two thousand dollars from members of the Grace family.

Plaintiff contends that he had a "property right" consisting of the possession of the offer of Austral to purchase oil and gas interests. He argues that defendant, contrary to its December 26, 1974 agreement with Girard, took "unlawful advantage" of the knowledge of Austral's bid released by Girard to defendant "in confidence" and sold its own interest in Jo-Mill directly to Austral for two hundred twenty-three thousand dollars, which sale was the direct result of "fraudulent misappropriation" of confidential information solicited by plaintiff and disclosed to defendant by Girard. Plaintiff urges that he is entitled to a five percent finder's fee from defendant on the grounds that defendant was "unjustly enriched" at the expense of plaintiff and that defendant's actions were an "intentional wanton and malicious interference" with the right of plaintiff to a finder's fee for services rendered resulting in the sale by defendant to Austral of its one-half interest in Jo-Mill. A careful review of the record reveals that plaintiff is not entitled to a finder's fee from defendant on any of the theories advanced by the plaintiff, i. e., unjust enrichment, intentional interference with the business relations, property rights, and potential economic advantage of plaintiff, or any contractual argument.[5]

A "finder's fee" contract may be defined as ` an arrangement by which an intermediary (or "finder") finds, introduces, and brings together parties to a business opportunity . . ." "Finder's Fee" Contract, 24 A.L.R.3d 1160, 1164 (1969). A finder may be distinguished from a broker by the limited subject matter of a finder's activities and by the respective duties of finders and brokers. The duties of a finder were laid out in *Amerofina, Inc. v. U. S. Industries, Inc.,* 232 Pa.Super. 394, 399, 335 A.2d 448, 451 (1975):

> In general, a finder is an independent actor whose role is that of a middleman who introduces the parties, supplies information to one or both about the other and is required to do little else, whereas a broker "negotiates on behalf of one of the parties or performs or is required to perform some other act identified with the interests of one party and against the interests of the other."

Plaintiff solicited a bid from Austral to purchase Girard's interest in Jo-Mill. Plaintiff agreed to let Girard reveal this bid to defendant in accordance with the December 26, 1974 agreement between Girard and defendant in strictest "confidence", and for the purpose of fixing the price at which defendant could exercise its preferential right of purchase. Although plaintiff dutifully obtained bids as a finder for Girard's interest in Jo-Mill, a close examination of the record does not reveal any services performed by plaintiff which would entitle plaintiff to a finder's fee from defendant. Obtaining bids for Girard's interest in Jo-Mill does not establish the right of plaintiff to a finder's fee from another party (defendant) selling a different interest (defendant's interest in Jo-Mill). On the basis of this record, we find that defendant did not violate its December 26, 1974 agreement with Girard nor did it receive services from plaintiff for which it must pay a finder's fee. Plaintiff made an agreement with Girard, not defendant, to solicit bids as a finder for Girard's interest in Jo-Mill. There was no agreement between plaintiff and defendant that plaintiff was to solicit bids for the sale of defendant's interest in Jo-Mill.

---

**5.** A court in diversity cases applies the conflicts of law principles of the state in which it sits. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In conflicts situations, Pennsylvania applies the law of the place that has the most significant relationship to the parties. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 21, 203 A.2d 796, 805–6 (1964); *Neville Chemical Co. v. Un-*

*ion Carbide Corp.,* 422 F.2d 1205, 1211 (3d Cir. 1970), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The parties have not concerned themselves with the conflicts of law issue. However, inasmuch as plaintiff is a resident and citizen of Pennsylvania, and Pennsylvania has the most significant relationship to the parties, Pennsylvania law is controlling. The law of each jurisdiction brought to our attention would yield the same result in the instant case.

The absence of an agreement between the plaintiff and the defendant is not remedied by the theory of quasi contract.[6] Under Pennsylvania law, quasi-contractual obligations are recognized as obligations created by the law for reasons of justice. *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 290, 259 A.2d 443, 449 (1969); *Cameron v. Eynon,* 332 Pa. 529, 532, 3 A.2d 423, 424 (1939). Quasi contracts must be distinguished from implied contracts and express contracts inasmuch as quasi contracts are not based upon an actual promise or contract agreed upon by the parties. *Schott,* 259 A.2d at 449; *Lach v. Fleth,* 361 Pa. 340, 349, 64 A.2d 821, 826 (1949); *Cameron,* 3 A.2d at 424.

An essential element to a cause of action in quasi contract is a finding of unjust enrichment. *Comm. Dept. of Public Welfare v. Adams County,* 30 Pa.Cmwlth. 164, 373 A.2d 143, 146 (1977). Principles of restitution require that a person who has been unjustly enriched at the expense of another is required to make restitution to the other party. *Binns v. First Nat. Bank,* 367 Pa. 359, 372, 80 A.2d 768, 776 (1951). The quasi-contractual principle of unjust enrichment, however, does not apply to an agreement deliberately entered into by the parties. *Durham Terrace, Inc. v. Hellertown Borough Authority,* 394 Pa. 623, 148 A.2d 899, 904 (1959). Further, the equitable principles of quasi contract are difficult to apply, and unjust enrichment will not be found in every instance. *Comm. Dept. of Public Welfare,* 373 A.2d at 146. An additional element of recovery under quasi contract is the requirement that services be performed under circumstances which put the recipient of the benefit upon notice that the party performing the services expected to be paid. *Colish v. Goldstein,* 196 Pa.Super. 188, 192–93, 173 A.2d 749 (1961); 13 Williston, Contracts, § 1575 (3d ed. 1970).

Case law outside Pennsylvania similarly imposes quasi-contractual obligations under circumstances where it would be unjust for the recipient of something of value to retain the benefit without paying for it. *Duggan v. International Ass'n of Machinists,* 510 F.2d 1086, 1088 (9th Cir. 1975); *cert. denied,* 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975); *Osborn v. Boeing Airplane Co.,* 309 F.2d 99, 102 (9th Cir. 1962); *Schenley Distillers Corp. v. Kinsey Distilling Corp.,* 136 F.2d 350, 352 (3d Cir. 1943). The leading circuit court case, *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973), defined a quasi contract as:

> not a contract at all, but a duty thrust under certain conditions upon one party to requite another in order to avoid the former's unjust enrichment.

In the *Bloomgarden* case, plaintiff finder brought an action in both quasi contract and contract implied-in-fact in order to recover a finder's fee for services leading to the inauguration of an enterprise to develop real property. The Circuit Court, per Judge Robinson, held that the lack of evidence on the record to establish whether plaintiff anticipated a finder's fee at the time he brought the parties together or whether defendants held the payment of such a fee in prospect defeated plaintiff's claim to a finder's fee on both an implied-in-fact and quasi-contractual theory of law. *Id.* 156 U.S.App.D.C. at 120, 479 F.2d at 212.

The *Bloomgarden* case stands for the proposition that recovery under a theory of quasi contract rests upon a showing that defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such as to require, in good conscience, that the defendant make restitution. *Id.* 156 U.S.App.D.C. at 119, 479 F.2d at 211; *Chase Manhattan Bank (Nat. Ass'n) v. Banque Intra, S.A.,* 274 F.Supp. 496, 499 (S.D.N.Y.1967). The *Bloomgarden*

---

**6.** Plaintiff is not entitled to recovery against defendant upon either an implied or express theory of contract law either inasmuch as those theories of contract law are premised upon mutual assent of the parties and require a "meeting of the minds." As our findings clearly demonstrate, there was no meeting of the minds between the plaintiff and the defendant in the instant case. *Crosby v. Paul Hardeman, Inc.,* 414 F.2d 1, 7 (8th Cir. 1969); 1 Williston, Contracts § 3 (3d ed. 1957); 17 C.J.S. Contracts § 3 at pp. 553–554 (1963).

holding requires prior notice as a condition to recovery under quasi contract. The recipient of a benefit must be placed upon notice that the party performing the services expected to be paid. *Id.* 156 U.S.App. D.C. at 120, 479 F.2d at 212; *Jones v. King Resources Co.,* 32 Colo.App. 56, 509 P.2d 814, 816 (1973); *Bellanca Corp. v. Bellanca,* 53 Del. 378, 169 A.2d 620, 623 (1961).

 Our review of the record does not show any basis for recovery upon quasi contract. The facts in this case do not establish that defendant was unjustly enriched at the expense of plaintiff by reason of selling its interest in Jo-Mill to Austral. Plaintiff has not shown on this record any facts which demonstrate that defendant violated its December 26, 1974 agreement with Girard, or that defendant had any knowledge of plaintiff at the time it conveyed its interest in Jo-Mill to Austral. Therefore, defendant had no prior notice that plaintiff was rendering services with the expectation that defendant would pay for those services. Neither the required showing of unjust enrichment nor prior notice have been met by plaintiff.[7] On the contrary, allowing plaintiff to collect a finder's fee from defendant, after plaintiff had already received compensation for his efforts in regard to Girard's sale of its remaining interest in Jo-Mill, would constitute unjust enrichment to the plaintiff by allowing him to collect twice for the same services. We hold that plaintiff is not entitled to recovery on the basis of quasi contract.

 Plaintiff also contends that he is entitled to recovery because of defendant's intentional, wanton and malicious interference with plaintiff's right to a finder's fee. Pennsylvania law recognizes an action in tort for an intentional, unprivileged interference with prospective business or contractual relations of third parties with a plaintiff. *Glenn v. Point Park College,* 441 Pa. 474, 477, 272 A.2d 895, 897 (1971); *Ja-*

cobson & Co. v. International Environment Corp.,* 427 Pa. 439, 455, 235 A.2d 612, 621 (1967); *Glazer v. Chandler,* 414 Pa. 304, 308, 200 A.2d 416, 418 (1964); *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 300, 167 A.2d 472, 474 (1960). The elements of this tort are (1) the actor (defendant) must act for the purpose of causing a specific type of harm to the plaintiff, (2) such action must be unprivileged, and (3) the harm must actually result. *Point Park College,* 272 A.2d at 898; *Philadelphia Electric Co.,* 167 A.2d at 474; Restatement, Torts, § 766 (1939). Underlying these requisites is the existence of a contract or prospective contractual relation between the third party and the plaintiff. Moreover, the tort is an intentional one. The defendant or actor must act for the purpose of causing harm to the plaintiff. *Point Park College,* 272 A.2d at 898, 899. *See Salomon v. Crown Life Insur. Co.,* 536 F.2d 1233, 1238 (8th Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976); *Zoby v. American Fidelity Co.,* 242 F.2d 76, 79 (4th Cir. 1957); *Highway Paving Co. v. Hausman,* 171 F.Supp. 768, 770 (E.D.Pa.1959); Restatement (Second), Torts, Tentative Draft No. 23, § 766(b) (1977).

 Plaintiff has submitted no evidence which would even suggest tortious interference with plaintiff's right to a finder's fee. Defendant did not know that plaintiff was rendering services, nor that plaintiff was rendering services with the expectation that defendant would pay for them. There was no business or contractual relation between plaintiff and defendant nor any interference by defendant with the business and contractual relations of plaintiff. Defendant had no knowledge of, purpose or intent to interfere with the prospective business or contractual relations of plaintiff. Girard disclosed Austral's bid to defendant, in accordance with the prior agreement of December 26, 1974. As we have heretofore found, defendant at all times

---

7. Similarly, failure to show that defendant should reasonably have held the prospect of payment of a finder's fee to plaintiff at the time of its sale to Austral prevents recovery under a

theory of implied contract. *Bloomgarden,* 156 U.S.App.D.C. at 116, 479 F.2d at 208; *Strabala v. Koster,* 524 P.2d 622, 624 (Colo.App.1974); 8 Am.Jur. Brokers, § 159 (1937).

acted in accordance with its December 26, 1974 agreement with Girard and lawfully conveyed its interest in Jo-Mill to Austral. We hold that plaintiff is not entitled to recovery on the theory of tortious interference.

Accordingly, defendant's motion for summary judgment will be granted, and judgment entered in favor of defendant and against plaintiff.