**Margarita LAZIC**

v.

**UNIVERSITY OF PENNSYLVANIA, Morton Benson and Martin J. Stamm.**

Civ. A. No. 79–1729.

United States District Court, E. D. Pennsylvania.

April 27, 1981.

Dona S. Kahn, Harris & Kahn, Philadelphia, Pa., for plaintiff.

Morris R. Brooke and Kathryn H. Levering, Drinker, Biddle & Reath, for Univ. of Pa. and Stamm.

Arnold J. Silvers, Phila., Pa., for Benson.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Dr. Margarita Lazic, filed this sex discrimination suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against the defendant, the University of Pennsylvania (hereinafter University). Presently before the Court is the defendants' motion for summary judgment in connection with those portions of count one of plaintiff's amended complaint set forth in paragraphs 9(a), (b), (c), and 10, relating to alleged discriminatory acts. Defendant also seeks to dismiss the remaining portions of count one, which allege retaliatory acts, on the ground that this Court lacks subject matter jurisdiction. Furthermore, the defendants University of Pennsylvania, Morton Benson, and Martin Stamm move to dismiss count two of plaintiff's amended complaint, a state tort claim, on the ground that this Court should not exercise pendent jurisdiction.

After a careful review of the record, this Court finds that there are genuine issues of material fact and will, for the reasons hereinafter discussed, deny the defendant's motion for summary judgment. In addition, the defendants' motion to dismiss the remaining portions of count one is denied. This Court will, however, decline to exercise pendent jurisdiction over the state tort claim in count two. Each of these issues will be addressed separately.

## SUMMARY JUDGMENT

Paragraphs 9(a), (b), and (c) of plaintiff's amended complaint allege that since April 26, 1974, the defendant University has engaged in unlawful practices which discriminated against plaintiff on the basis of her sex.[1] These allegations include failure or refusal of the University to promote or consider plaintiff for various positions, the discharge of plaintiff on July 1, 1975, and the replacement of plaintiff by a male with fewer qualifications. The University has moved for summary judgment on these portions of the plaintiff's complaint on the ground that plaintiff's allegations are barred by a settlement agreement executed by the parties on April 25, 1974.

Fed.R.Civ.P. 56(c) provides in pertinent part:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

1. The particular section outlawing sex discrimination in employment; 42 U.S.C. § 2000e–2(a), provides:

§ 2000e–2. Unlawful employment practices—

Employer practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

\* \* \* \* \* \*

Thus, in examining the propriety of a motion for summary judgment, the court must first determine whether there is a genuine issue as to any material fact. Summary judgment is not warranted except on a clear showing that no genuine issue of any material fact remains for trial. *Ely v. Halls Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978); *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781 (3d Cir. 1978); *Suchomajcz v. Hummel Chemical Company*, 524 F.2d 19, 24 (3d Cir. 1975). The moving party has the burden of proving that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Adickes v. S. H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135 (3d Cir. 1980). It is also well settled that "[i]n all summary judgment motions, all doubts as to the existence of material facts should be resolved against the movant." *Sachs v. Continental Oil Co.*, 454 F.Supp. 614, 616 (E.D.Pa.1978), citing *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *Abdallah v. Caribbean Sec. Agency*, 557 F.2d 61, 63 (3d Cir. 1977). In addition, Fed.R.Civ.P. 56(e) provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Thus, if the movant in a motion for summary judgment submits evidentiary material which indicates there is "no genuine issue of material fact," it then becomes the responsibility of the opposing party to introduce its own evidentiary material to the contrary. *DeLong Corp., supra* at 1142. *See, e. g., Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir. 1974). The Third Circuit has recently noted that

> ... [E]ven when the material facts are not in dispute, summary judgment may be inappropriate when contradictory inferences may be drawn from the facts.

*DeLong, supra* at 1441.

The following facts are uncontested: The plaintiff was a graduate student at the University in the Department of Slavic Languages and Literature from 1967–70. She obtained a Ph.D. from the University in 1970, specializing in Slavic Language studies. She is a native speaker of Russian and Serbo Croatian. She was employed by the University as an instructor of languages during the years 1967–71. By letter dated December 14, 1971, plaintiff was advised that she had been promoted to the rank of Assistant Professor,[2] with a two-year terminal appointment at the University effective July 1, 1972 and which would terminate on June 30, 1974. During November, 1973, Dr. Benson, Head of the Department of Slavic Languages, submitted to the Dean a recommendation from him that Dr. Lazic be reappointed to an Assistant Professorship, along with two very negative letters from Dr. Maria Brooks, the other tenured member of the Department, recommending that plaintiff not be reappointed. Plaintiff had consistently gotten excellent reviews from her students, and had maintained a 4.0 grade average during her graduate studies. Plaintiff, after Dr. Brook's letters, protested to both the Dean and the University AAUP (American Association of University Professors) that her academic freedom had been infringed upon by Dr. Brooks. By letter dated February 12, 1973, plaintiff was advised that her appointment would not be renewed beyond June 30, 1974. On or about February 17, 1974, the plaintiff requested that the University reconsider its decision to terminate, which request was denied. Thereafter, she appealed her denial of reappointment to the Faculty of the Slavic Languages Department of the School of Arts and Sciences, and to Dr. Eliot Stellar, Provost of the University, protesting

2. The affidavit of Dr. James E. Davis, dated January 18, 1980, Associate Dean for the Faculty of Arts and Sciences indicates that the faculty of the School of Arts and Sciences consists of persons holding the following titles: Professor, Associate Professor, Assistant Professor, Lecturer, Instructor, Teaching Assistant (part time) and Research Assistant (part time).

the circumstances surrounding the University's decision not to reappoint her. Dr. James E. Davis, Executive Assistant to the Provost of the University, undertook an investigation of Dr. Lazic's charges. In the interim, plaintiff enlisted the services of Howard Lesnick, Professor of Law at the University's School of Law, who represented the plaintiff throughout the processing of her appeal. During the investigation, various discussions were conducted among Professor Lesnick, the plaintiff and Dr. Davis. It was agreed that Professor Lesnick would draft an agreement whereby the University would extend the plaintiff's appointment for one additional year, through June 30, 1975, "... regardless of any action which might be hereafter taken or discussed concerning any further appointment ..." and that acceptance by the plaintiff of such appointment "... shall constitute a release of any claims, complaints or grievances I have or might have asserted against the University by reason of any action heretofore taken or decision heretofore made regarding my employment by the University." The agreement was signed on April 25, 1974 by Dr. Lazic and by Dr. Stellar, on behalf of the University. It is further uncontested that on June 25, 1974, two months after the date that the agreement was signed, Dr. Lazic received a letter from the University informing her that the Trustees, upon the recommendation of the University had decided not to renew her appointment beyond June 30, 1975. During the fall and winter of 1974, Dr. Lazic attempted through letters to the Trustees and various members of the Administration to have her appointment reconsidered, alleging that the denial was based on improper conduct and the questionable practices on the part of members of her department. She filed an official complaint with the Faculty Grievance Committee on January 10, 1975 complaining that she had been unfairly denied reappointment as an Assistant Professor. On March 6, 1975, she sent an additional letter to Dr. Davis in which she detailed instances in which males were treated differently than females in the Department. She filed a complaint on the same date with

the Equal Employment Opportunity Commission (EEOC) charging the University with sex discrimination. On April 21, 1975, the Faculty Grievance Committee informed Dr. Stellar that it had decided that the waiver of April 25, 1974 precluded it from considering the merits of Dr. Lazic's case. She was then notified by letter dated May 9, 1975 that the University had accepted the advice of the Grievance Committee and that her appointment would expire on June 30, 1975. During 1975, Dr. Lazic began meeting with an investigator from the EEOC, and during the course of these interviews, informed him of sexual demands which had been placed upon her in her position at the University. She also produced for the investigator photographs which she claimed had been sent to her by this same individual showing various women in obscene positions. The EEOC contacted various former members of the Slavic Languages Department and obtained affidavits from several women that they too had had sexual demands placed upon them by this same person while they were students or faculty members. The EEOC forwarded these affidavits to the University. On August 18, 1977 the University, under signature of its general counsel, wrote the EEOC contending that the settlement agreement barred any further processing of the plaintiff's charges. On October 20, 1977, the plaintiff received a copy of a letter from Martin Stamm, Director of Professional Groups and Associate Director of Placement at the University, written to Dr. Benson. The letter informed Dr. Benson that as per his (Benson's) request of October 12, 1977, Mr. Stamm had deleted the positive references Dr. Benson had made on the plaintiff's behalf from Dr. Lazic's Active Professional Dossier file. Those references were made by Dr. Benson on December 16, 1970 and September 17, 1974. Mr. Stamm confirmed that neither of those recommendations would be mailed out to prospective employers. By letter dated October 28, 1977, the University was advised by the EEOC that it had officially closed its file, for "lack of

jurisdiction" on the charges filed by the plaintiff against the University.[3]

Defendant University contends that the allegations of plaintiff's amended complaint contained in count one, paragraphs 9(a), (b), and (c), are barred by the terms of the settlement agreement executed on April 25, 1974. We note at the outset that the agreement refers to actions "heretofore taken or decision[s] heretofore made." In addition, as we read the plaintiff's amended complaint, plaintiff seeks relief only for acts of discrimination allegedly occurring since April 26, 1974. The amended complaint does not, on its face, seek redress for discriminatory acts occurring prior to the settlement agreement. Defendant asserts, however, that the settlement agreement pertains to plaintiff's allegations on the ground that the claims "arise from . . . alleged discriminatory events . . . which antedate the execution of the release and effects which are causally rooted to these alleged discriminatory events."[4] Although the University does not contend that the agreement should be read as applying to all acts of discrimination alleged to have occurred after the execution of the agreement, this Court would not accept such an interpretation of the agreement. As the Fifth Circuit has stated in *United States v. Allegheny-Ludlum Industries*, 517 F.2d 826 (1975):

> . . . the release cannot preclude a suit for *any* form of appropriate relief for subsequent injuries caused by *future* acts or undertakings the effects of which are equivalent to the otherwise compromised, noncompensable effects of past discrimination covered by the complaint or the decree.

517 F.2d at 854.

■ In the instant case, the Court has carefully examined the settlement agreement executed by the parties on April 25,

1974 and finds that it is unambiguous and clearly pertains only to actions "heretofore taken or decision[s] heretofore made." In addition, as noted previously, in the event that the settlement agreement was ambiguous, this Court would decline to interpret it as pertaining to future acts of discrimination. *See, Allegheny-Ludlum, supra.* The Court has also carefully examined plaintiff's amended complaint and, as we read it, its focus is upon discriminatory acts allegedly taking place after the date of the settlement agreement and it does not appear to be alleging the consequences of any alleged discriminatory acts occurring prior to the date of the settlement. Thus, this complaint does not appear to allege a cause of action where an individual has settled her claims with her employer, became dissatisfied with the settlement and seeks to bring a Title VII action based on the same alleged discriminatory conduct that formed the basis of the voluntary settlement. Were this such a complaint, this Court would be inclined to hold that the settlement agreement bars plaintiff's suit. *Lyght v. Ford Motor Company*, 458 F.Supp. 137, 141 (E.D.Mich.1978); *Strozier v. General Motors Corp.*, 442 F.Supp. 475, 481 (N.D. Ga.1977). As the Court noted in *Allegheny-Ludlum*:

> In no respect does . . . *Gardner-Denver* support the assertion that an aggrieved employee who freely settles his or her unliquidated demand with the employer . . . may reciprocate by suing the same defendant at a later date *on the same cause of action*, merely because the employee grows dissatisfied with the payment for which he or she settled. (emphasis added).

517 F.2d at 858–9.

The University appears to contend that the acts alleged in plaintiff's amended complaint are simply the effects of earlier em-

---

3. The University asserts in its memorandum that the EEOC's finding of "no jurisdiction" was based on its conclusion that plaintiff was foreclosed from filing charges with the Commission which were predicated upon the same complaints she had registered with the University and which were allegedly resolved under

the settlement agreement. We can find no basis in the record to support this contention.

4. The University cited *United States v. Allegheny-Ludlum Industries*, 517 F.2d 826 (5th Cir. 1975) in support of this contention.

ployment decisions and thus are barred by the settlement agreement. We note that similar arguments have been advanced and rejected in other Title VII cases, particularly those involving claims against universities where discriminatory acts occurred prior to and after March 24, 1972,[5] the date on which Title VII became applicable to educational institutions, *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975); *Rackin v. University of Pennsylvania*, 386 F.Supp. 992 (E.D.Pa.1974); *Presseisen v. Swarthmore College*, 386 F.Supp. 1337 (E.D.Pa. 1974); *Johnson v. University of Pittsburgh*, 359 F.Supp. 1002 (W.D.Pa.1973). This Court, however, does not and cannot make a determination as to the validity of the University's contention at this point in the proceedings (motion for summary judgment), since such a determination rests upon genuine issues of material fact. As we read the plaintiff's complaint, its focus is upon discriminatory acts allegedly occurring after the date of the settlement agreement, and it does not appear to allege the consequences of alleged discriminatory acts occurring prior to the date of the settlement agreement.

Plaintiff contends in her brief that the settlement agreement was not "voluntary and knowing". *Alexander v. Gardner-Denver Company*, 415 U.S. 36, at 52, 94 S.Ct. 1101, at 1021 n.15, 39 L.Ed.2d 147 (1974). In view of the Court's determination that the settlement agreement bars suit only for acts occurring prior to its execution, and the plaintiff's complaint alleges acts occurring subsequently to the execution of the agreement, the Court sees no reason to consider the matter at this time.

---

5. In these cases, the defendant Universities asserted that the discharges were complete, and the decisions not to grant tenure were final prior to March 24, 1972, even though the discharge and refusal of tenure were not to be effective until after the Universities lost their Title VII exemption. This argument was rejected, the Courts holding that allegations of post-exemption discrimination were cognizable under Title VII, although pre-March 24, 1972 allegations were not cognizable.

6. Section 704(a), 42 U.S.C. § 2000e–3(a), proscribes other employer conduct, not discussed

## MOTION TO DISMISS THE RETALIATION CLAIM

■ University has moved to dismiss paragraph 9(d) of count one of plaintiff's amended complaint. Paragraph 9(d) alleges that the University violated Title VII[6] by deleting positive references from the Professional Dossier file of plaintiff which is maintained by the defendant University and supplied to prospective employers in retaliation for her complaints about the defendants' discriminatory practices. Defendant moves to dismiss this portion of count one on the grounds that the claim is barred by plaintiff's failure to file a charge of this nature with any responsible governmental agency, and that plaintiff failed to allege that she filed *any* of her charges of sex discrimination with the appropriate state agency and has thus failed to exhaust her administrative remedies. We shall address each of these contentions separately.

We note that:

There are two jurisdictional prerequisities to the maintenance of an action in the district court pursuant to the provisions of Title VII. The first is the timely filing of charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC), 42 U.S.C. § 2000e–5(e). The second is receipt of a right to sue letter from the EEOC and the institution of suit within the time period mandated by 42 U.S.C. § 2000e–5(f)(1).

*Cap v. Lehigh University*, 433 F.Supp. 1275 (E.D.Pa.1977) (citations omitted). In addition, the Third Circuit has:

in § 2000e–2, taken in retaliation for an employee's efforts to oppose "unlawful employment practices," as that term is defined in § 2000e–2:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

... made clear its belief that "broad remedial legislation such as Title VII is entitled to the benefit of liberal construction." The court went on to state that "humanitarian legislation" should be interpreted in a humane and commonsensical manner.

*Cohen v. Community College of Philadelphia*, 484 F.Supp. 411, 429 (E.D.Pa.1980) quoting *Hart v. J. T. Baker Chemical Corp.*, 598 F.2d 829, 831 (3d Cir. 1979). In connection with this motion we have considered the following facts as alleged by the plaintiff in her affidavit accompanying her brief in support of her reply to defendants' motion to dismiss and for summary judgment, and those facts alleged by Dr. Davis in his affidavit. Plaintiff filed charges with the EEOC on March 6, 1975 and thereafter filed an amended charge on May 7, 1976. The alleged deletions of the positive references occurred sometime between October 12, 1977 and October 20, 1977. By letter dated October 28, 1977, the University was advised by the EEOC that it had officially closed its file on the charges filed by plaintiff on the ground of lack of jurisdiction. Dr. Lazic did not register her retaliation claim with the EEOC and defendant argues that her failure to do so bars her from seeking relief on that claim in this Court. The Court is not persuaded by that contention. When faced with virtually the same issue, two of this Court's Learned Colleagues have applied the rule that:

> ... jurisdiction may be exercised over all claims encompassed within the EEOC charge and like or related matters which might reasonably be expected to be subject to an EEOC investigation growing out of the charge.

*Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963, 970 (E.D.Pa. 1977) (Luongo, J.). *See also, Cohen v. Community College of Philadelphia*, 484 F.Supp. 411 (E.D.Pa.1980) (Ditter, J.). In *Flesch*, Judge Luongo further stated that:

> This rule is broad enough to include claims arising from new acts occurring during pendency of the EEOC charge and

reasonably related to or growing out of acts alleged in the charge .... Claims for retaliation for filing the charge are within this category.

434 F.Supp. at 970 (citations omitted). The plaintiff in *Flesch* was thus permitted to pursue claims in the district court which had not been included in the EEOC charge. A similar result was reached in *Cohen*.[7] Applying these legal standards and reasoning to the case at hand, we conclude that Dr. Lazic's charge of retaliation contained in count one of her amended complaint is a "like or related matter which might reasonably be expected to be subject to an EEOC investigation growing out of the charge." *See, e. g., Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464–67 (5th Cir. 1970); *Bernstein v. National Liberty International Corp.*, 407 F.Supp. 709, 713 (E.D.Pa.1976). Therefore, the Court has jurisdiction to hear the allegation of retaliation contained in paragraph 9(d) of count one of Dr. Lazic's amended complaint. We hasten to add, however, that although there is no dispute between the parties that the alleged deletions were in fact made (this being confirmed by the October 20, 1977 letter from Mr. Stamm to Dr. Benson, the authenticity of which has not been questioned, Exh. "E" of plaintiff's affidavit), the plaintiff must prove that the references were deleted *in retaliation* for asserting her Title VII rights. *Pantchenko v. C. B. Dolge Co.*, 581 F.2d 1052 (2d Cir. 1978). Other than determining this Court's jurisdiction over the matter, we do not suggest a finding as to whether plaintiff has demonstrated a prima facie case of discrimination. *See, e. g., Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The defendants next contend that this Court is without jurisdiction to hear Dr. Lazic's claim of retaliation because she has failed to allege in her complaint that she filed any discrimination charges with any responsible state agency, and has thus

---

**7.** *See Hubbard v. Rubbermaid*, 436 F.Supp. 1184, 1190–91 n. 10 (D.Md.1977).

failed to exhaust her administrative remedies as required by 42 U.S.C. § 2000e–5(c), Title VII § 706(c). Under Title VII, the EEOC cannot hear a complaint until the appropriate state agency has first had an opportunity to act on the case. *See, e. g., Lombardi v. Margolis Wines and Spirits, Inc.*, 465 F.Supp. 99, 101 (E.D.Pa.1979); *Albano v. General Adjustment Bureau, Inc.*, 478 F.Supp. 1209 (S.D.N.Y.1979), *aff'd* 622 F.2d 572 (1980); *Watson v. Magee Women's Hospital*, 438 F.Supp. 581, 15 FEP cases 1557 (W.D.Pa.1977). In the instant case, plaintiff asserted by sworn affidavit that her EEOC charge dated March 6, 1975 had been sent by the EEOC to the Philadelphia Human Relations Commission (PHRC) which is the deferral agency in this area, on March 21, 1975. It is settled that the procedural requirements of 42 U.S.C. § 2000e–5(c) may be met where the EEOC "acting on behalf of the complainant," referred the charge to the state agency and then deferred its own proceedings for the proper time so as to allow the state agency the first opportunity to act on the charge. *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Albano, supra; Lombardi, supra* at 101. Thus, plaintiff has alleged that her charge was filed with an appropriate state agency. That she filed her charge first with the EEOC, which then referred it to the PHRC is not fatal to this Court's jurisdiction. *See, e. g., Delaware State College v. Ricks*, —— U.S. ——, 101 S.Ct. 498, 502, 66 L.Ed.2d 431 (1980); *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir. 1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). The Court will, therefore, enter an order denying defendant's motion to dismiss paragraph 9(d) of count one of plaintiff's amended complaint.

## PENDENT JURISDICTION

Count two of plaintiff's amended complaint alleges that the actions of the University, Dr. Morton Benson, and Martin Stamm in deleting the recommendations from plaintiff's Professional Dossier file constitute a tortious interference with plaintiff's right to contract in violation of the laws of Pennsylvania. Plaintiff has asked this Court to invoke its pendent jurisdiction to take cognizance of this state claim. Defendants argue that this Court should not take jurisdiction over plaintiff's tort claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) stated that:

> Federal courts have the constitutional *power* to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court.

*Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979) citing *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1130. *See, e. g., Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir. 1980). However, even if these constitutional requirements are met, the Court has broad discretionary powers to decline pendent jurisdiction. We must consider:

> ... (a) whether judicial economy, convenience and fairness to the litigants would be served by having the pendent state law claims determined in a single proceeding, (b) whether trying the pendent state law claims will cause jury confusion and (c) whether the pendent state claims present unsettled questions of state law.

*Cap v. Lehigh University*, 433 F.Supp. at 1284 citing *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Reed v. Philadelphia Housing Authority*, 372 F.Supp. 686 (E.D.Pa.1974).

■ In the instant case plaintiff has alleged a tortious interference with *prospective* business relationships. The elements of this tort are (1) the actor must act for the purpose of causing a specific type of harm to the plaintiff, (2) such action must be unprivileged, and (3) the harm must actually result. *Glenn v. Point Park College*, 441 Pa. 474, 477, 272 A.2d 895, 897 (1971); *Birl v. Philadelphia Electric Company*, 402 Pa. 297, 300, 167 A.2d 472, 474

(1960); *Sachs v. Continental Oil Co.,* 454 F.Supp. 614 (E.D.Pa.1978). In addition, a plaintiff must:

> ... prove a reasonable likelihood or probability that the anticipated business arrangement will be consummated. To this effect the Supreme Court has stated: "Underlying these requisites, of course, is the existence of a contract or a prospective contractual relation between the third person and the plaintiff."

*Behrend v. Bell Telephone Company,* 242 Pa.Super. 47, 363 A.2d 1152 (1976), vacated and remanded on other grounds, 473 Pa. 320, 374 A.2d 536 (1977). In the instant case, there are unsettled questions of state law involved in this pendent state claim. The plaintiff has not alleged the existence of a prospective contractual relationship with a third party. Such defect may be fatal in a motion to dismiss for failure to state a claim under state law. An additional reason for this Court to decline to exercise pendent jurisdiction is that the plaintiff has requested a jury trial for the state claims, while Title VII affords no right to trial by jury. The Court and the litigants would thus be confronted with possible jury confusion. Also, Title VII affords equitable relief, money damages being limited to backpay. Under the state tort claim, however, plaintiff seeks punitive damages. In effect, her state claim seeks relief which is not available under Title VII. Because she "implicates divergent legal theories of relief", pendent jurisdiction is particularly inappropriate. *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. For the foregoing reasons, this Court will, in its discretion, decline to exercise pendent jurisdiction over the state claim. In addition, the plaintiff has added defendants Benson and Stamm to the pendent state law claim. These are parties for whom no independent basis of federal jurisdiction is alleged. The plaintiff is therefore asking this Court to exercise "pendent party jurisdiction" over Benson and Stamm. *See, Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975). Because we have declined to exercise pendent jurisdiction over the state claim, the court finds it unnecessary to determine whether this Court could exercise pendent party jurisdiction in this situation.

Therefore, for the reasons heretofore discussed, the defendant's motion for summary judgment will be denied and the motion to dismiss will be denied. Furthermore, this Court will decline to exercise pendent jurisdiction over the state tort claim. An order will be entered accordingly.