IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charles Talbert, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 543 M.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Governor Josh Shapiro, Laurel Harry, | : | |
| Department of Corrections, Christine | : | |
| Meukel, Mindy Parks, and Smart | : | |
| Communications, | : | |
| Respondents | : | Submitted: September 9, 2024 |

BEFORE:  HONORABLE ELLEN CEISLER, Judge
         HONORABLE LORI A. DUMAS, Judge
         HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  November 6, 2024

Petitioner Charles Talbert, an inmate currently incarcerated within our Commonwealth's prison system, has filed a *pro se* amended petition for review (Amended Petition) in our original jurisdiction. Therein, Talbert asserts that Respondents Commonwealth of Pennsylvania (Commonwealth); Governor Josh Shapiro; Laurel Harry; Department of Corrections (Department); Christine Meukel; and Mindy Parks (collectively, Commonwealth Respondents) have violated various constitutional provisions by preventing him from having sufficient internet access, interfering with mail that has been sent to him, and limiting the amount of legal materials he is allowed to keep while incarcerated. In addition, Talbert argues that the Commonwealth, the Department, and Respondent Smart Communications have conspired to commit fraud by agreeing to have Smart Communications process and

scan incoming inmate mail under the allegedly false pretense that doing so prevents the Department's employees from being exposed to, and sickened by, illicit and dangerous substances contained therein. In response, Commonwealth Respondents and Smart Communications have submitted preliminary objections, via which they seek dismissal of the Amended Petition. Additionally, Talbert has filed an application for summary relief, through which he requests judgment in his favor on all counts. After thorough review, we sustain Commonwealth Respondents' preliminary objections in part and overrule them in part. We also deny Talbert's application for summary relief in part. Finally, we *sua sponte* conclude we lack jurisdiction to consider the Amended Petition in part, as to Count III, and consequently transfer this matter in part to the Court of Common Pleas of the 37th Judicial District- Forest County Branch (Common Pleas) for disposition of that claim.[1]

## I. Background

As Talbert essentially offers self-contained averments for each of his claims, rather than an all-encompassing narrative, we will summarize those claims in succession.

First, Talbert alleges that the Commonwealth, the Department, Governor Shapiro, and Harry have arbitrarily and capriciously prevented him from accessing

---

[1] Talbert was incarcerated at the State Correctional Institution at Forest (SCI-Forest) at the time that the facts giving rise to his lawsuit occurred. *See* Am. Pet., ¶¶43-46, 48-51, 57-60. We take judicial notice of the fact that SCI-Forest is located in Forest County, as well as that Forest County is part of the 37th Judicial District. *See* COM. OF PA., SCI Forest, https://www.pa.gov/en/agencies/cor/state-prisons/sci-forest.html (last accessed November 5, 2024); 42 Pa. C.S. § 901(a) (stating that Forest and Warren Counties constitute the 37th Judicial District); Pa. R.E. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

"current information from the Internet[.]" Am. Pet., ¶¶14, 16-18. Talbert asserts that this has deprived him of the ability to accrue new knowledge and will negatively affect "his ability to adjust back into society" upon his release from prison in 2026. *Id.*, ¶¶15, 19. Accordingly, Talbert argues in Count I that this restriction violates article I, section 7 of the Pennsylvania Constitution,[2] and requests a preliminary injunction barring those respondents "from depriving him [of] access to the Internet[] and to thus allow him to research and print out lawful[,] up-to-date information for his rehabilitation and reentry." *Id.*, ¶62, Count I Wherefore Clause.

Second, Talbert states that each carceral institution in our Commonwealth's prison system employs a correctional mail inspector supervisor (CMIS) to oversee inmate mail services. *Id.*, ¶¶20-24. Talbert also maintains that there is "a statewide practice of encouraging and enabling . . . CMIS employees to [be] derelict [in performing] their official duties by having non-mailroom correctional officers pick up and deliver inmate mail." *Id.*, ¶25. According to Talbert, this has resulted in "gross negligence, abandonment, and reckless indifference towards [his] incoming

---

[2] Article I, section 7 of the Pennsylvania Constitution reads as follows:

> The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

PA. CONST. art. I, § 7.

3

and outgoing mail," including "obstruction of his correspondence, by allowing vindictive and unethical correctional officers to deprive him of his incoming mail and/or to throw away his outgoing mail[,]" and "has also caused substantial interference with contract agreements between [Talbert] and vendors that sell books and magazines." *Id.*, ¶¶32-33; *see id.*, ¶¶37-53 (alleged examples of interference with Talbert's mail). Accordingly, Talbert argues in Count II that this alleged interference violates his constitutional right to free speech under the First Amendment of the United States Constitution.[3] *Id.*, ¶¶63-66. He therefore requests a preliminary injunction against Commonwealth Respondents that would prevent them from "(a) delaying service of his incoming mail and publications; (b) allowing anyone other than mailroom employees from picking up and delivering his mail; and (c) depriving him of all his mail." *Id.*, Count II Wherefore Clause.

Third, Talbert claims that the Commonwealth, the Department, Governor Shapiro, and Harry agreed to have Smart Communications process and scan incoming inmate mail "under false and fraudulent pretenses[,]" specifically on the basis that illicit and dangerous substances were being smuggled into prisons through the mail and sickening Department employees. *Id.*, ¶¶53-54. Talbert argues that there is no proof that such substances were being mailed to prisoners, or that Department employees were actually sickened as a result, and maintains that drugs are now even easier to procure inside the Commonwealth's prisons, in spite of this mail handling policy. *Id.*, ¶54. Further, Talbert alleges that this policy has resulted in

---

[3] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

A. non-legal attorney mail taking approximately [two] weeks to reach him from the date mailed, causing court delays and interference with pending litigation[;]

B. unreasonable delays on other legal mail[; and]

C. confidential health care, family, and financial records and mail being uploaded to a public scanning system, thus depriving [him] of any privacy.

*Id.*, ¶55. Accordingly, Talbert argues in Count III that those respondents and Smart Communications have engaged in a civil conspiracy to commit fraud by handling inmate mail in this manner. *Id.*, ¶¶67-69. As relief, he requests a preliminary injunction "enjoining them from having [his] incoming mail sent to [Smart Communications] and [mandating that it be sent] directly to the institution(s) [at] which he resides[,]" as well as unspecified monetary damages. *Id.*, Count III Wherefore Clause.

Finally, Talbert avers that he notified staff at the State Correctional Institution at Forest (SCI-Forest) on December 5, 2023, that the 2 legal boxes he was allowed to have under Department policy would be insufficient to store all the materials from his 11 pending civil cases, and that he needed a total of 5 boxes to properly do so. *Id.*, ¶¶57-59. In response, SCI-Forest staff denied Talbert's request and informed him that he could instead request a "legal exchange"; this displeased Talbert because it "would make things complicated even more by exchanging needed materials for other needed materials." *Id.*, ¶60. This denial resulted in Talbert

A. throw[ing] away approximately $1,000.00 worth [of] printing materials and publications[,] such as newspapers and prison legal news[;]

B. stor[ing] all of his legal books, case law, and reference materials in[] property storage without access[; and]

C. ship[ping] 2 boxes of legal records to the U.S. District Court for the Western District of Pennsylvania[], seeking for the Court to issue an order for the return of his legal property.

5

*Id.*, ¶61. Accordingly, Talbert asserts in Count IV that the aforementioned limit of legal boxes violates his constitutional right under article I, section 11 of the Pennsylvania Constitution[4] to seek relief through the courts. *Id.*, ¶¶70-73. He consequently requests a preliminary injunction against the Commonwealth, the Department, Governor Shapiro, and Harry, barring "them from depriving him [of] all [of] his legal materials relevant to all of his legal matters." *Id.*, Count IV Wherefore Clause.

Thereafter, Commonwealth Respondents and Smart Communications contested the Amended Petition by filing their aforementioned, respective preliminary objections, while Talbert presented his application for summary relief. Each side subsequently responded to their opponent's submission. As such, this matter is ready for disposition.

## II. Discussion

### A. Preliminary Objections

We start off by considering respondents' respective preliminary objections, and elect to reorder and summarize their arguments as follows. First, Commonwealth Respondents demur to each of Talbert's claims by asserting that he has not stated facially-viable constitutional claims based upon article I, sections 7 and 11 of the Pennsylvania Constitution, or upon the First Amendment of the United States Constitution, as well as that he has not articulated a facially-viable civil conspiracy claim. Com. Resps.' Br. in Supp. of Prelim. Objs. at 8-16. In addition, Commonwealth Respondents demur to Counts I through III of the Amended

---

[4] Article I, section 11 of the Pennsylvania Constitution declares that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." PA. CONST. art. I, §11.

6

Petition, asserting that each of those claims must be dismissed as to specific respondents (Governor Shapiro and Harry for Counts I and III, and Governor Shapiro, Harry, Meukel, and Parks for Count II) on account of Talbert's failure to offer averments establishing that those respondents were personally involved in the complained-of conduct. *Id.* at 4-7. Finally, Commonwealth Respondents demur to Count II and request that we dismiss that claim as to the Commonwealth and the Department, because those entities cannot be sued for violations of the United States Constitution under 42 U.S.C. § 1983.[5] *Id.* at 7-8. As for Smart Communications, it both demurs to Count III, on the basis that Talbert has failed to articulate a facially-viable civil conspiracy claim, and asserts in the alternative that the averments offered by Talbert in support of Count III are insufficiently specific. Smart Commc'ns' Prelim. Objs. at 6-15.

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (cleaned up). "In addition, courts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also documents or exhibits attached to it." *Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 71 (Pa. Cmwlth. 2007).

---

[5] Enacted as part of the Civil Rights Act of 1871, this statute allows individuals to sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983.

> A preliminary objection in the nature of a demurrer . . . tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*Torres*, 997 A.2d at 1245 (Pa. Cmwlth. 2010).

## Count I

In Count I, Talbert asserts that Commonwealth, the Department, Governor Shapiro, and Harry have violated article I, section 7 of the Pennsylvania Constitution by arbitrarily and capriciously preventing him from accessing "current information from the Internet[.]" Am. Pet., ¶¶14, 16-18, 62. Article I, section 7 states, in relevant part: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." PA. CONST. art. I, § 7. Where, as here, prison regulations and restrictions impinge upon an inmate's constitutional rights, the government must establish that those limitations are related to a legitimate penological interest in order to defeat a claim regarding that impingement. *Thomas v. Corbett*, 90 A.3d 789, 798 (Pa. Cmwlth. 2014). In order to determine if the requisite relationship exists, a court must consider:

> (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate, neutral, governmental interest advanced to justify the regulation; (2) whether the inmate has an alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) "whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at a *de minimis* cost to valid penological objectives."

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

8

In this instance, Commonwealth Respondents fall far short of satisfying the *Turner* test. Instead of attempting to address each of the test's prongs, they instead baldy assert that "[c]ourts have consistently upheld restrictions on inmate's access to computers and the internet, reasoning that access to internet resources jeopardizes facility security." Com. Resp'ts' Br. in Supp. of Prelim. Objs. at 11. Beyond the facial inadequacy of this response, Commonwealth Respondents fail to recognize that both of the cases that they rely upon were decided at the summary judgment stage and were based upon the particulars of each inmate's situation. *See Aguiar v. Recktenwald*, 649 F. App'x 293, 295 (3d Cir. 2016) (inmate did not have constitutionally protected interest in using and maintaining Facebook account, largely due to threat to institutional safety that would be imposed by allowing unmonitored communication via social media and the monitoring burdens that would be imposed upon prison staff); *Solan v. Zickefoose*, 530 F. App'x 109, 111 (3d Cir. 2013) (inmate did not have constitutional right to e-mail access, due to their "knowledge . . . and . . . apparent inclination . . . to use e-mail for improper purposes"). Here, there is nothing at this stage of litigation that clearly shows that Talbert would pose a similar threat to institutional safety. Furthermore, by Talbert's own admission, he only seeks internet access that is properly monitored and subject to appropriate access restrictions. *See* Am. Pet., ¶¶15-18. Thus, Talbert's situation is distinguishable from *Aguiar* and *Solan* on both the facts and the procedural posture.

Commonwealth Respondents also claim in passing that this issue is not ripe because Talbert will be afforded internet access in the lead-up to his release from prison in 2026. Com. Resp'ts.' Br. in Supp. of Prelim. Objs. at 11-12. However, the fact that Talbert may obtain such access in the future does not resolve the question of whether he has a constitutional right to that access on an ongoing basis while

9

incarcerated. We are unpersuaded by Commonwealth Respondents' argument that, effectively, Talbert's putative ability to access the internet at some point in the future will cure any deprivations, constitutional or otherwise, that he is currently experiencing.

Moreover, we are not swayed by Commonwealth Respondents' argument regarding the lack of averments about Governor Shapiro's and Harry's personal involvement with the restrictions imposed upon Talbert's internet access. The entirety of Commonwealth Respondents' argument on this point is based upon 42 U.S.C. § 1983. *See id.* at 4-7. Section 1983 (as discussed *infra*) is a federal statute that enables individuals to file suit based upon violations of the United States Constitution. However, to state the obvious, Count I is premised upon a provision contained in the Pennsylvania Constitution, not its federal counterpart. Consequently, we are constrained to overrule Commonwealth Respondents' demurrer to Count I.

Count II

In Count II, Talbert alleges that Commonwealth Respondents' handling of his mail has violated his First Amendment-based right to free speech. Am. Pet., ¶¶20-25, 32-33, 63-66. We need only address Commonwealth Respondents' second and third arguments supporting their demurrer to Count II in order to dispose of this claim.

It is beyond cavil that the Eleventh Amendment[6] bars suit from "litigants who seek a remedy against a State for alleged deprivations of civil liberties . . . unless the

---

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

State has waived its immunity, or unless Congress has exercised its undoubted power under [Section] 5 of the Fourteenth Amendment[7] to override that immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress availed itself of this authority over 150 years ago, by enacting Section 1983 as part of the Civil Rights Act of 1871. This statute created an exception to the Eleventh Amendment, through which individuals may sue a

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]

42 U.S.C. § 1983. "Section 1983 claims may be brought in the courts of this Commonwealth and are not subject to state sovereign immunity defenses. A state or state agency, however, is not a "person" under Section 1983 and cannot be sued under Section 1983 for violation of federal constitutional rights." *Watkins v. Pa. Dep't of Corr.*, 196 A.3d 272, 274-75 (Pa. Cmwlth. 2018) (cleaned up). Furthermore,

> "the Eleventh Amendment to the United States Constitution shields states and state officials acting in their official capacity from Section 1983 actions." *Heinly v. Com.*, 621 A.2d 1212, 1214 n.2 (Pa. Cmwlth. 1993) (citing *Will*, 491 U.S. 58). This Court has explained that "[a]n action against [a defendant] in his official capacity . . . is the equivalent of an action against . . . a state instrumentality." *Law v. Fisher*, 399 A.2d 453, 456 (Pa. Cmwlth. 1979). Accordingly, state officials sued in their official capacities are not "persons" under Section 1983. *See Verrichia v. Dep't of Revenue*, 639 A.2d 957 (Pa. Cmwlth. 1994). Notwithstanding, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Section] 1983 because official-capacity

---

[7] This section vests "Congress [with] power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]." U.S. CONST. amend. XIV, § 5.

actions for prospective relief are not treated as an action against the state." *Verrichia*, 639 A.2d at 962 n.11 (citing *Will*, 491 U.S. at 71 n.10). Further, "state officials are 'persons' under Section 1983 and as such, may be sued in their individual capacities and found liable for damages for violating protected rights while in the course of their employment." *Schnupp v. Port Auth. of Allegheny Cnty.*, 710 A.2d 1235, 1238 n.4 (Pa. Cmwlth. 1998) (emphasis added) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

*Murray v. Wetzel* (Pa. Cmwlth., No. 542 M.D. 2017, filed Aug. 8, 2018), slip op. at 2 n.2, 2018 WL 3747808, at *1 n.2 (cleaned up).[8] In addition,

[i]t is well established that personal liability under Section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. It is also well settled . . . that personal involvement of [respondents] in alleged constitutional deprivations is a requirement in a [Section] 1983 case and that a [petition for review] must allege such personal involvement. Each named [respondent] must be shown, through the [petition for review's] allegations, to have been personally involved in the events or occurrences upon which [the petitioner's] claims are based.

*Shick v. Wetzel* (Pa. Cmwlth., No. 583 M.D. 2016, filed Sept. 10, 2018), slip op. at 4-5, 2018 WL 4288663, at *2 (quoting *Atwell v. Lavan*, 557 F. Supp. 2d 532, 540-41 (M.D. Pa. 2008)); *accord Rivera v. Silbaugh*, 240 A.3d 229, 237 (Pa. Cmwlth. 2020) (petitioner fails to plead a viable Section 1983 against a state official or employee if the petitioner does not offer sufficiently specific averments that the official or employee was personally involved in violating the petitioner's constitutional rights). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with

---

[8] Per Section 414(a) of this Court's internal operating procedures, "an unreported panel decision of this Court issued after January 15, 2008," may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).[9]

With this in mind, we agree with Commonwealth Respondents that Talbert has failed to state a viable Section 1983 claim in Count II.[10] This is for two reasons. First, neither the Commonwealth nor the Department can be sued pursuant to Section 1983. *Watkins*, 196 A.3d at 275. Second, Talbert only offers vague allegations regarding Governor Shapiro's, Harry's, Meukel's, and Parks' putative involvement in the handling of his mail, all of which amount to generalized assertions that each of them have some sort of supervisory role in administering the inmate mail system in our Commonwealth's prisons. *See* Am. Pet., ¶¶20-53. Such allegations fall far short of establishing, even on a facial basis, that any of those four state officials were personally involved with handling Talbert's mail and directly caused him to suffer the issues with sending and receipt that he complains of in his Amended Petition, or even that they were aware of the alleged problems and nevertheless acquiesced to their occurrence. We therefore sustain Commonwealth Respondents' demurrer to Count II.

## Count III

Under normal circumstances, we would now move on to considering the merits of Commonwealth Respondents' and Smart Communications' preliminary objections to Count III. However, we cannot do so in this instance, because we *sua sponte* conclude that we do not have original or ancillary jurisdiction to consider that

---

[9] "[T]he pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth[.]" *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

[10] We read Count II as being a Section 1983 claim, even though Talbert does not expressly characterize it in that way, due to the fact that he alleges therein that the Commonwealth and a number of its appendages and officials have violated his First Amendment-based rights.

portion of Talbert's Amended Petition.[11] Section 761(a) of the Judicial Code states, in relevant part:

> The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
>> (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:
>>
>> . . . .
>>
>>> (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

42 Pa. C.S. § 761(a)(1)(v). "An action in trespass . . . lie[s] 'for redress in the shape of money damages for any unlawful injury done to the plaintiff, in respect either to his person, property, or rights, by the immediate force and violence of the defendant.'" *Balshy v. Rank*, 490 A.2d 415, 420 (Pa. 1985) (quoting Black's Law Dictionary 1674 (4th rev. ed. 1968)). To that end, "all actions against the Commonwealth or its officers acting in their official capacity for money damages based upon tort liability fall outside the scope of the Commonwealth Court's original jurisdiction and are properly commenced in the courts of common pleas." *Stackhouse v. Com.*, 832 A.2d 1004, 1008 (Pa. 2003). However, suits against the Commonwealth government or its officials that seek purely declaratory relief or an injunction restraining government action are not in the nature of trespass and, thus,

---

[11] We note that neither Commonwealth Respondents nor Smart Communications have challenged our jurisdiction over Count III. Nevertheless, this does not impede our authority to address the jurisdictional defects present in that claim. "[Q]uestions of jurisdiction can never be waived, and may be raised at any time by the parties or *sua sponte* by [the] court." *Pennhurst Med. Grp., P.C. v. Dep't of Pub. Welfare*, 796 A.2d 423, 425 (Pa. Cmwlth. 2002).

14

may fit within the scope of our original jurisdiction. *Fawber v. Cohen*, 532 A.2d 429, 433 (Pa. 1987). Furthermore, Section 761(c) of the Judicial Code provides that, "[t]o the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction." 42 Pa. C.S. § 761(c). In sum, actions in the nature of trespass are expressly excluded from our original jurisdiction and therefore stand outside our ancillary jurisdiction as well, unless such an action relates to another articulated claim that does fall within the scope of our original jurisdiction. *Id.*, § 761(a)(1)(v), (c).

Here, Talbert requests declaratory and injunctive relief targeted at Commonwealth Respondents and Smart Communications, due to his belief that they have conspired to commit fraud by agreeing under false pretenses to have Smart Communications process and scan incoming inmate mail. Am. Pet., ¶¶53-54, 67-69. Nevertheless, it remains that he also desires monetary damages as a remedy for the same putative violations of the law. *Id.*, Count III Wherefore Clause. We conclude, then, that Count III also sounds in trespass. Furthermore, we conclude the assertions Talbert makes in Count III are entirely unrelated to the claims he makes elsewhere in his Amended Petition.

> In these circumstances, we do not believe the inclusion of a [request] for declaratory or injunctive relief premised upon the same events can properly be understood to transform [Count III] from one sounding in trespass into the type of matter contemplated by *Fawber*, or by the Legislature, as belonging within [our] original jurisdiction.

*Stackhouse*, 832 A.2d at 1008.

> [A]lthough one might argue that what [Talbert] really wants is [declaratory and injunctive relief] rather than money damages, he is the one who included a request for

15

> money damages in [Count III of] his [Amended Petition].
> It is not our function to ignore a portion of his request for
> relief so that original jurisdiction can be vested in this
> Court, a court of limited original jurisdiction, rather than
> in the common pleas court, a court of broad original
> jurisdiction.

*Miles v. Beard*, 847 A.2d 161, 165 (Pa. Cmwlth. 2004). As such, we have no authority to review Count III as an original jurisdiction claim or pursuant to our powers of ancillary jurisdiction.

In line with the foregoing analysis, we conclude that we lack jurisdiction to consider Count III. Rather than dismiss that claim outright, however, we will transfer it to Common Pleas, which shall treat that portion of Talbert's Amended Petition as a complaint filed in its original jurisdiction. *Stedman v. Lancaster Cnty. Bd. of Comm'rs*, 221 A.3d 747, 760-61 (Pa. Cmwlth. 2019); 42 Pa. C.S. § 5103(a); Pa. R.A.P. 751; *see* PA. CONST. art. V, § 5(b) (our courts of common pleas "hav[e] unlimited original jurisdiction in all cases except as may otherwise be provided by law"). Subsequent to transfer, Common Pleas shall rule upon Commonwealth Respondents' and Smart Communications' respective preliminary objections to Count III, as well as Talbert's application for summary relief regarding Count III, which Common Pleas shall treat as a motion for summary judgment.[12]

## Count IV

In Count IV, Talbert alleges that Commonwealth Respondents' refusal to allow him to have five boxes for storing his legal materials, rather than the two allowed under Department policy, violated his right to seek relief through the courts under article I, section 11 of the Pennsylvania Constitution. Am. Pet., ¶¶57-61, 70-

---

[12] "An application for summary relief is properly evaluated according to the standards for summary judgment." *McGarry v. Pa. Bd. of Prob. & Parole*, 819 A.2d 1211, 1214 (Pa. Cmwlth. 2003).

16

73. We, however, agree with Commonwealth Respondents' assertion that Talbert has failed to articulate a viable legal claim in Count IV.

> To state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an "actual injury" to court access as a result of the denial. *See Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000) (observing that denial of access to legal documents may constitute a violation of the First and Fourteenth Amendments). "The Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding the sentencing or the conditions of confinement." *See id.*

*Key v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 304 M.D. 2022, filed Mar. 22, 2024), slip op. at 8-9, 2024 WL 1230802, at *4 (cleaned up). In this instance, Talbert does not aver, either generally or specifically, that he has suffered the loss or rejection of a nonfrivolous legal claim as a result of Commonwealth Respondents' denial of his storage request. *See* Am. Pet., ¶¶57-61, 70-73. He has therefore failed to state a viable article I, Section 11 claim. Consequently, we sustain Commonwealth Respondents' demurrer to Count IV.

## B. Application for Summary Relief

Moving on, we turn to Talbert's application for summary relief.

> Applications for summary relief addressed to this Court's original or appellate jurisdiction are authorized under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, which provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." [Pa. R.A.P. 1532(b).] Summary relief is similar to summary judgment under the Pennsylvania Rules of Civil Procedure, in that the requested relief is only appropriate where there are no disputed issues of material fact and it is clear that the applicant is entitled to the requested relief under the law. *See Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017). Moreover, we review the record in the light most favorable

17

> to the nonmoving party, resolving all doubts as to the existence of disputed material facts against the moving party. *Id.*

*Marcellus Shale Coal. v. Dep't of Env't Prot.*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019) (cleaned up).

As Count I is the only portion of Talbert's Amended Petition that has survived preliminary objections and falls within the scope of our jurisdictional powers, we confine our analysis and disposition of his application to summary relief to that claim. Talbert asserts that he is entitled as a matter of law to judgment in his favor on Count I because he has a "constitutional right [under article I, section 7 of the Pennsylvania Constitution] to gain current information on legitimate subjects from social media to enable his rehabilitation and enhance [the chances of] his reentry success[.]" Talbert's Br. in Supp. of Appl. for Summ. Relief at 5. However, it is well settled that

> "[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 359 (Pa. 1998). As we have noted in the past, "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Robson v. Biester*, 420 A.2d 9, 13 (Pa. Cmwlth. 1980).

*Feliciano v. Pa. Dep't of Corr.*, 50 A.3d 1269, 1274-75 (Pa. Cmwlth. 2021). None of the cases referenced by Talbert address whether inmates have a constitutional right to access current information through the internet, nor does Talbert offer any other substantive legal arguments in support of his claim that he is constitutionally entitled to be provided with such access. *See* Talbert's Br. in Supp. of Appl. for Summ. Relief at 5 (citing and quoting *Packingham v. N. Carolina*, 582 U.S. 98 (2017); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Griswold v. Conn.*, 381 U.S.

18

479 (1965)). It is therefore not clear that Talbert is entitled to judgment in his favor regarding this claim.

### III. Conclusion

In accordance with the foregoing analysis, we overrule Commonwealth Respondents' demurrer to Count I and sustain their demurrers to Counts II and IV. Additionally, we dismiss Counts II and IV with prejudice, and transfer Count III to Common Pleas due to our lack of jurisdiction over that claim. Furthermore, we deny Talbert's application for summary relief as to Count I. Finally, we direct Commonwealth Respondents to file their answer to Count I within 30 days.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charles Talbert, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 543 M.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Governor Josh Shapiro, Laurel Harry, | : | |
| Department of Corrections, Christine | : | |
| Meukel, Mindy Parks, and Smart | : | |
| Communications, | : | |
| Respondents | : | |

## **O R D E R**

AND NOW, this 6th day of November, 2024, it is hereby ORDERED:

1. Respondents Commonwealth of Pennsylvania, Governor Josh Shapiro, Laurel Harry, Department of Corrections, Christine Meukel, and Mindy Parks' (collectively Commonwealth Respondents) demurrer to Count I of Petitioner Charles Talbert's amended petition for review (Amended Petition) is OVERRULED;

2. Commonwealth Respondents' demurrers to Counts II and IV of the Amended Petition are SUSTAINED, and those claims are DISMISSED WITH PREJUDICE;

3. Count III is TRANSFERRED to the Court of Common Pleas of the 37th Judicial District-Forest County Branch (Common Pleas), due to lack of jurisdiction. The Commonwealth Court's Prothonotary shall transmit a copy of the record of the above-captioned proceedings to Common Pleas' Prothonotary, together with a copy of this opinion and order, as

well as a copy of this matter's docket entries. Subsequent to transfer, the assigned Common Pleas judge shall rule upon Commonwealth Respondents' and Respondent Smart Communications' respective preliminary objections to Count III, as well as Talbert's application for summary relief regarding Count III;

4. Talbert's application for summary relief is DENIED as to Count I;

5. Commonwealth Respondents will file their answer to Count I within 30 days.

_____
ELLEN CEISLER, Judge